WILLIAM B. JOHNSON *vs.* NORCROSS BROTHERS COMPANY.

Suffolk.     March 29, 1911. — June 22, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Contract,* In writing. *Evidence,* Extrinsic affecting writings. *Custom.*

At the trial of an action by a plumber and piper against a general contractor upon a contract in writing, by which the plaintiff agreed to furnish all the work of "plumbing, gas-piping, and ice water plant piping" in a certain building then being constructed by the defendant for the owner, it appeared that the contract contained a plain provision that the defendant should not be held to pay anything for changes, additions or extra work unless such work was ordered by the defendant in writing. The work for which the plaintiff sought compensation was extra work for which no order in writing ever was given by the defendant. The plaintiff offered to show a general custom, known to the parties, that in cases of contracts between a sub-contractor and a general contractor, which contained such a provision, it was customary for the general contractor to direct the sub-contractor to proceed with extra work without waiting for a written order, for the sub-contractor so to proceed and for the written order to be delivered by the general contractor later, either during the progress of the extra work or after its completion, and that the plaintiff had proceeded with the extra work in question without waiting for written orders, relying upon this general custom. There was no evidence of an oral order for the extra work having been given by the defendant or in his behalf. The judge excluded the evidence. *Held,* that the evidence was excluded rightly; both because there was no evidence of an oral order by the defendant or some one authorized by him for the extra work, and because the natural meaning of the provision of the contract was that the written order to do the work should be given before the work was begun, and the evidence therefore was rejected properly as an attempt to vary the express language of the contract; and also because, even if it should be assumed that the alleged custom was not inconsistent with the contract and that the plaintiff relied upon it, he relied upon it at his peril and took the risk of no order in writing being given later, and in the present case no order in writing ever was given.

HAMMOND, J.     This was an action upon a written contract by which the plaintiff, the party of the second part, agreed with

the defendant, the party of the first part, to provide all the materials and do all the work of " plumbing, gas-piping, and ice water plant piping " in a certain building, then being erected by the defendant for the owner, as set forth and explained in certain drawings and specifications prepared by the architects. The case was sent to an auditor * who found for the plaintiff on the first, sixth and seventh items of the account and for the defendant upon the others. It was then tried before a judge † sitting without a jury, who found " upon all the evidence that the auditor's report has not been overruled," and that the findings of the auditor were sustained. The case is before us upon the plaintiff's exceptions to the exclusion of certain evidence and to refusals to rule as requested.

Among the provisions of the contract were the following : " In case any particular shall be deficient, or not clearly expressed in said specifications and drawings, the said party of the second part will apply to the said first party for additional drawings and explanations, and will carry out the general design, as directed by the said first party, in a thorough manner as part of the contract. . . . It shall be lawful for said party of the first part at all times to direct, in writing, any additions to or deviations from the drawings and specifications aforesaid, without in any other respect or particular varying this agreement or impairing the force thereof ; and in case of any such addition or deviation so directed in writing, such further time shall be allowed for the completion of said work as the architect shall decide to be reasonable, and such sums of money shall be added to or subtracted from the amount of the consideration hereinafter agreed to be paid, as the increase or diminution in the amount of work and materials thereby occasioned shall be fairly worth. And it is expressly agreed that no alterations or additions are to be paid for unless so directed in writing." And near the end of the contract is the general provision that " the general contractor [the Norcross Brothers Company] will pay for no extra work or material unless ordered in writing."

The purpose of the provision that the defendant shall not be held to pay anything either for changes, additions or other extra

---

* Samuel C. Bennett, Esquire.

† *Hardy*, J.

work unless ordered in writing is plain. The provision manifestly was intended to prevent any future controversy likely to arise as to the liability of the general contractor for work so done, and it is a useful and reasonable provision.

The evidence offered * to show a general custom known to the parties was rightly rejected. The natural meaning of the language of the contract is that the written order to do the work is to be given before the work begins, and that only such an order is intended. If that be the meaning of the contract, then the evidence was properly rejected as inconsistent with its express language. But however that may be, the evidence so far as it was inconsistent with the contract was not admissible, and so far as, being consistent with the contract, it bore upon the question of the time when the written order should be given, it was immaterial in this case because no such written order ever was given. If it be urged that in reliance upon this custom the plaintiff went ahead without the written order, expecting to get that at some time afterward, the answer is that he did so at his peril. To say that because he did so he therefore should recover without the written order, the defendant not having waived the provision or having been guilty of fraud, is to annul the provision for the order. If there be such a custom as the plaintiff offered to show, then the provision of the contract read in the light of that custom would be interpreted to mean that for changes and alterations and extras there was to be no pay unless some time

---

* The plaintiff's offer was as follows :

(a) " I offer to show that this clause providing that no additions or alterations shall be paid for unless ordered in writing is common in contracts of this character between general contractors and sub-contractors, not only in case of the defendant's contracts but those of other general contractors; that during the progress of the work, when an addition or alteration is decided upon, it is the general custom, which was known to both plaintiff and the defendant, irrespective of this clause, for the general contractor to direct the sub-contractor to proceed without waiting for a written order and for the sub-contractor so to proceed; and for the written order to be delivered by the general contractor later, either during the progress of the extra work or after its completion ; that it would be practically suicidal for the business of the sub-contractor with the large general contractors, if he refused to go forward under such circumstances without waiting for the written order, and that the plaintiff, as regards the items in suit, proceeded with the work without waiting for written orders, in reliance upon this general custom."

before the work was fully done, or after its completion, a written order was given, but it would not show that the written order was not to be given at all. Moreover, it would be immaterial when, as in this case, it is not shown that any oral order was given by the defendant or by any one for whom it was responsible.

The plaintiff made twenty-eight requests for findings of fact. As to these the trial judge says in his memorandum that "so far as the plaintiff's requests for findings of fact are consistent with the findings of the auditor in his report I give them. So far as they are inconsistent therewith I deny them." In other words the judge, giving due weight to the report of the auditor and to the other evidence, came to the conclusion that the auditor was right in his findings and adopted them. It cannot be said that in this there was any error in law. The evidence being conflicting, his decision could not be said to be wrong in law. Nor do we understand that the plaintiff has taken any exceptions to this action of the judge.

The plaintiff submitted seventeen rulings, some of which were given and some refused, the latter being those numbered one, five, eight, ten, and twelve to seventeen, both inclusive.* The fifth was properly refused. It would hold the defendant to pay for work though it did not order the work or in any way agree to pay for it. The eighth seems to involve the assumption, contrary to fact, that the specifications gave a line for the main drain. Even if such a line had been given and afterwards was varied by the architects to an unreasonable extent, the defendant, having nothing to do with it, would not be chargeable with the cost. The parties had expressly agreed that the changes which the architect could order should be those which would not increase the cost. This request was properly refused. The tenth request was rendered immaterial by the findings of the auditor affirmed by the court. There was no finding of an agreement between the plaintiff and the architect's representative and the defendant. Moreover in giving the eleventh request the judge gave all of the

---

* It is unnecessary to quote these requests for rulings, which, for the purpose of understanding the decision, are described sufficiently in the opinion. Coburn, mentioned in the twelfth request, was the defendant's superintendent of construction.