WELLESLEY HOUSING AUTHORITY *vs.* S. & A. ALLEN
CONSTRUCTION CO.

Suffolk.    January 7, 1960. — March 7, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, &
CUTTER, JJ.

*Contract,* Building contract, Performance and breach.    *Arbitration.*
*Housing.*

A contractor required by a building contract to do his work in accordance with specifications and plans was not relieved of responsibility for having installed on the panels under overhanging roofs interior grade plywood, instead of waterproof plywood indicated on the plans, by absence of any mention of the nature of the plywood in the specifications or by a faulty ventilation design as a factor in delamination of the plywood installed.  [467–468]

Under a provision of a contract for public housing construction, that all disputes under the contract should be decided by the architect subject to a right of appeal to a public board whose decision should be "final," the finality of a decision of a dispute made by the board after full hearing participated in by both the housing authority and the contractor was not affected by the fact that the proceeding leading to the decision was initiated by a reference of the dispute by the authority directly to the board rather than by submission to the architect and appeal from his decision to the board.  [470–471]

After a dispute between a housing authority and a contractor as to the propriety of certain materials installed by the contractor in a public housing construction project had been settled in favor of the contractor by a decision of a public board which the construction contract provided should be "final," and the authority by reason of such decision had made final payment to the contractor, an action thereafter brought by the authority against the contractor to recover the cost of replacing such materials could not be maintained on the basis of provisions of the contract that replacement of faulty materials should be a condition precedent to the contractor's right to final payment, and that final payment should not constitute acceptance of work not properly done or "relieve the contractor . . . in respect to . . . responsibility

*for faulty materials"* and the contractor must remedy *"any defects in the work"* appearing within a stated period after *"final acceptance."* [471–472]

A decision made by a public board, which settled a dispute between a housing authority and a contractor constructing housing and which by the terms of the construction contract was to be "final," must stand in the absence of bad faith on the part of the board or of failure by it to exercise honest judgment even though this court thought its decision was clearly wrong on the merits. [472]

CONTRACT. Writ in the Superior Court dated June 11, 1954.

The action was heard without jury by *Meagher, J.*

*Frank B. Frederick, (Victor H. Kazanjian* with him,) for the plaintiff.

*Lawrence H. Adler, (Fred Ross* with him,) for the defendant.

WHITTEMORE, J. In this action heard by a judge in the Superior Court without a jury the Wellesley Housing Authority seeks to recover, from the general contractor for a housing project, the cost of installing waterproof or exterior grade plywood in place of interior grade plywood in the soffits (panels under overhanging roofs) of the housing project.

The plaintiff's exceptions are to the general finding for the defendant, to action on requests, and to evidential rulings.

The evidence showed and the judge found in substance that the plans, under the contract of January 9, 1950, carried the words "W. P. Plywood" which meant either waterproof or weatherproof plywood but "nowhere in the contract or the specifications [apart from the drawings] was there any reference to the type or description of the plywood"; the defendant (Allen) installed interior plywood, which because of the glue used is more likely to delaminate than is W. P. Plywood; inadequate ventilation caused condensation of moisture at the soffits; in 1951 Allen "remedied the condition that was obvious pertaining to the plywood soffits and their delamination and . . . the design for ventilation was changed; . . . the condition persisted" and the dispute between the parties continued.

The judge also found that the matter was referred to the State housing board[1] under § 19 of the general conditions of the contract ("All disputes arising under this contract shall be decided by the architect subject to a right of appeal to the chairman or director of the board, whose decision shall be final"); there was a decision for Allen and the board ordered payment and the issuance of a certificate of completion, which issued, and Allen was paid in full; the authority failed to prove that the installation of the interior plywood caused the delamination. The judge ruled that the plaintiff had not sustained the burden of proving that damage resulted from "any failure on the part of the defendant or distinguished the damage which resulted from the faulty design" and concluded "I therefore find for the defendant."

It was undisputed that after final payment the plaintiff had had the soffits replaced by another contractor, and demanded payment from Allen.

1. The contract required that "W. P. Plywood," specified on the drawings, be installed. The "work" was to be done in accordance with the specifications "and the drawings referred to therein." It was irrelevant to the action that the delamination which disclosed the defendant's default was caused or made worse by inadequate vents for the spaces above the soffits. We rule therefore that the finding for the defendant cannot be sustained on the second ground stated.

2. We think, however, that a ruling that the dispute had been finally disposed of under § 19 of the general conditions was warranted and the ruling is required that the authority's claim did not survive the final payment to Allen under the contract.

The evidence showed that substantial delamination was known from and after February, 1951. In October, 1951, the architect notified Allen that as a condition of final pay-

---

[1] The general conditions of the contract defined "board" and "State housing board" to "mean the chairman of the State housing, an agency . . . created by chapter 260, Acts of 1948." That statute inserted G. L. c. 6, § 64, and provides that the powers and duties of the board other than making reports "shall be exercised and performed by the chairman."

ment it would be required to replace all plywood soffits, where plywood was failing, with exterior grade plywood. Allen made some replacements. Larger vents were installed by another contractor to overcome excessive condensation. On April 14, 1952, the executive director of the authority wrote the board that all of some and parts of others of forty-two soffits at thirty-nine apartments needed to be replaced, that Allen contended it was not responsible and should not have to replace the soffits, and that "[t]o make this brief I finally told him that I would bring this matter to the attention of the State housing board and ask them to meet with the contractor and architect and myself and see if we could not get these matters settled." A meeting was held at the board's office on May 22, 1952. The board on September 16, 1952, wrote the executive director, referring to the May meeting with the contractor and the authority and recommending that the architect state his views and then "we will advise you of the steps to take . . . [to process the] certificate of completion." The architect on November 28, 1952, wrote that he estimated that there was disintegration of soffits at about half the dwelling units; that during construction some nonwaterproof plywood had been delivered and the contractor had been told and understood that waterproof plywood was required; that there was inadequate ventilation and louvers had been installed, but that the manufacturer had informed him that waterproof plywood should not delaminate under any conditions and that his conclusion was that the plywood used was not waterproof. On December 22, 1952, the chairman of the board wrote the executive director that on review of conditions at the site and reports he found that the contractor had "complied with all the requirements of the contract." He requested that the final completion certificate be forwarded for approval.

On February 16, 1953, the authority by its executive director wrote the new chairman of the board, referring to the letter of December 22, 1952, and asking that he "review this matter. . . . The replacement of soffits, if it must be

done at the expense of the authority, is apt to amount to a considerable sum, and that is why we want to be perfectly certain where the responsibility should be placed before we undertake the job." On March 25, 1953, the chairman of the board wrote the executive director, with copy to Allen, "As a result of the conference . . . in this office on . . . March 19, 1953, the following decision has been made: 1. . . . After hearing all the evidence presented at this hearing and studying information which had been previously received, it is the opinion of this office that the general contractor did comply with the terms and conditions of his contract and is, therefore, entitled to full payment of monies due him. . . . [Hence] your authority should . . . process . . . certificate of completion, Part II and submit the same to this office for approval. 2. Since it is absolutely essential that the defective soffits be replaced in a proper manner as quickly as possible, you are requested to contact Mr. Dreyer of this office so that a plan may be worked out . . . ." Thereafter, the authority (by its executive director and chairman, signing on April 14, 1953) and the State housing board (by its chairman, signing on April 24, 1953) certified that "all claims and exceptions listed in Part I of certification of completion . . . have been disposed of as follows: . . ., The matter of soffits cleared up by decision of chairman, State housing board, see letter [of] March 25, 1953, entitling [the] contractor to full monies due him. . . . [V]oucher for final payment . . . is due and payable immediately on approval of State housing board."

The board on April 27 sent the executive director the approved copies of Part II of the completion certificate, and on April 29 the executive director sent Allen the authority's check "for . . . final payment on contract."

The plaintiff relies on the absence of a formal reference to the architect and of an appeal from his decision. We do not think the informality significant. The authority caused the dispute, without the delay of formal reference, to come before the agency whose decision was to be final under the contract. The letter of December 22, 1952, left it uncertain

whether the board was making a decision, or only recommending what the authority should do. But the letter of the new chairman of March 25, 1953, of which Allen had a copy, and which followed the authority's request, in effect, for a decisive ruling, asserted the hearing of evidence, the studying of information, and that a decision had been made, which was that it was the opinion of that office that Allen had complied with its contract and was entitled to full payment. The final payment by the authority, following this "decision," in effect informed Allen that the authority had accepted the decision as such. In these circumstances, that is, a reference, a hearing in which both parties participated, and a decision, Allen would have been bound to replace the soffits if the board had so decided; the same circumstances bound the authority to the opposite decision.

The significance of the final payment after the board's decision is to be judged in the light of §§ 39I and 7 of the general conditions. Section 39I provides that "As a condition precedent to his right to final payment, the contractor shall make all corrections in the work which are required to remedy any defects in the work, or to replace faulty materials with materials complying with the specification herein, or to fulfill any of the orders or directions of the authority, or the architect, made under the terms of this contract. Unless and until the contractor has complied with this requirement, the contractor shall not be entitled to make any claim or bring any action against the authority for moneys withheld."

Section 7 provides that "Neither the final certificate of payment nor any provision in the contract documents nor partial or entire use or occupancy . . . shall constitute an acceptance of work not done in accordance with the contract documents or relieve the contractor or his sureties . . . in respect to . . . responsibility for faulty materials or workmanship. The contractor or his sureties shall remedy any defects in the work and pay for any damage to other work resulting therefrom which shall appear within a period of one year from the date of final acceptance unless a longer

period is specified. The local authority will give notice of observed defects with reasonable promptness."

The authority acted to have it determined whether there were any defects which the contractor could be required to correct as a condition of receiving final payment. Section 7 did not cause the claim for rectification of the known defective soffits to survive the final payment following the determination of the issue in the way which the authority had chosen and the contract in substance provided.

There is no basis for finding that this was a defect discovered after final payment. Allen denies the authority's right to make good such a defect and charge the cost to the contractor without first giving it an opportunity to do the necessary work. We do not reach that issue.

The office of the executive director of a local housing authority is established by statute. G. L. c. 121, § 26N. This official may by the statute have such duties as are assigned him. No question is raised as to the authority in the premises of the executive director and there appears no basis for doubting it.

We discern no ground for upsetting the settlement of this dispute by the board. The decision of the board's chairman on the evidence in this record appears plainly wrong. But we do not know all that was before the board. The board may have decided, contrary to our holding, that the specifications did not adequately specify waterproof plywood; it may have deemed, as we do not, that the inadequate ventilation was relevant. Such errors, if established, are not a basis of upsetting an award. There is no such gross mistake as implies bad faith, and no basis for finding a failure to exercise honest judgment. *Kesslen Bros. Inc.* v. *Board of Conciliation & Arbitration,* 339 Mass. 301, 302–303, and cases cited. Nothing in *Dondis* v. *Borden,* 230 Mass. 73, relied on by the plaintiff, impairs the effect of the decision of the chairman and the final certificate based thereon which was intended by the authority to be a final certificate after disposition of its claim against Allen.

We need not review the rulings given and denied. The

evidence excluded or admitted over exception was inconsequential as the case stands.

The plaintiff relies on evidence in the case, offered and excluded, tending to show that the board was acting in its supervisory capacity.[1] Undoubtedly it was doing so in its recommendations and directions, but none of this evidence, nor all of it, lessens the significance of the reference to the chairman, a hearing of the dispute, a final decision, and action by the authority in the light thereof. .

If the authority wished to reserve its limited rights to attack the final decision and did not intend that the final payment should dispose of the claim against Allen, it should have made an express reservation.

*Exceptions overruled.*

---

[1] General Laws c. 121, § 26U (as amended through St. 1946, c. 574, § 1), reads: "Each housing authority shall keep an accurate account of all its activities and of all its receipts and expenditures and shall annually in the month of January make a report thereof to the housing board, to the director of the division of accounts in the department of corporations and taxation, and to the mayor of the city or to the selectmen of the town within which such authority is organized, such reports to be in a form prescribed by the board, with the written approval of said director. The housing board or the said director may investigate the affairs of housing authorities and their dealings, transactions and relationships. They shall severally have the power to examine into the properties and records of housing authorities and to prescribe methods of accounting and the rendering of periodical reports in relation to projects undertaken by such housing authorities. The housing board may from time to time make, amend and repeal rules and regulations prescribing standards and stating principles governing the planning, construction, maintenance and operation of projects by housing authorities. Compliance with the Housing Authority Law, the rules and regulations adopted by the housing board hereunder, and the terms of a clearance or low-rent housing project approved by the housing board, may be enforced by a proceeding in equity."