LIZZA AND SONS, INC., Plaintiff, Appellant,

v.

Daniel A. D'ONFRO et al., Defendants, Appellees.

No. 5571.

United States Court of Appeals First Circuit.

Aug. 18, 1960.

John L. Saltonstall, Jr., Boston, Mass., with whom Carl M. Sapers and Hill, Barlow, Goodale & Adams, Boston, Mass., were on brief, for appellant.

Hugh J. Corcoran, Springfield, Mass., with whom Richard S. Milstein, Spring-field, Mass., Isadore A. Solomon, Attilio R. Antonioni, Leominster, Mass., and Ely, King, Kingsbury & Corcoran, Springfield, Mass., were on brief, for appellees.

Before WOODBURY, Chief Judge, HARTIGAN, Circuit Judge, and DAY, District Judge.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts entered May 29, 1959 dismissing plaintiff's complaint against the defendants.

Plaintiff, Lizza and Sons, Inc. [hereinafter referred to as Lizza], is a general construction contractor. Lizza was awarded a contract by the Massachusetts Turnpike Authority for construction of the Lee-Becket section of the Massachusetts Turnpike. Defendants D'Onfro are members of the same family who as partners do business as Daniel D'Onfro's Sons. This partnership [hereinafter referred to as D'Onfro's Sons] is also a contractor in the construction business. Hartford Accident and Indemnity Company [hereinafter referred to as Hartford] is an issuer of contract and performance bonds.

Plaintiff alleged in its complaint that D'Onfro's Sons agreed with Lizza to build on subcontract various items on bridge and culvert structures involved in the Lee-Becket section of the Turnpike, and that Hartford had issued a performance bond in favor of Lizza. Plaintiff further alleged D'Onfro's Sons had breached its contract and Hartford had not performed on its bond, and sought judgment from D'Onfro's Sons and Hartford for damages, interest and costs.

Defendants answered denying the existence of any agreement between Lizza and D'Onfro's Sons, and denying any breach of contract or damage to Lizza. Hartford also alleged that since there was no contract between Lizza and D'On-

fro's Sons there was no basis for liability on the part of Hartford.[1]

After trial before the court, judgment was entered for the defendants dismissing the plaintiff's complaint. The district court made findings and conclusions that may be summarized as follows. In May 1955 Lizza asked D'Onfro's Sons to submit quotations for the structures on the Lee-Becket section. Lizza used the quotations of D'Onfro's Sons in making its bid on the section. Following the opening of the bids, Lizza met with Daniel and Ralph D'Onfro and insisted that D'Onfro's Sons take $8,000 less than its total quotation. On July 13, 1955 Ralph and Daniel D'Onfro went to Lizza and generally discussed the work to be covered by the subcontract and the price. No agreement was reached but Lizza was to draft a contract and if D'Onfro's Sons liked it they would execute it. On July 19 Lizza sent a draft to D'Onfro's Sons.

A week later Daniel D'Onfro conferred with Joseph F. Marino, project manager of Lizza, at Lizza's Oyster Bay, New York office. Daniel D'Onfro brought with him a letter setting out D'Onfro's Sons objections to the draft. He also brought two bonds in favor of Lizza, each of which recited that "the Principal [D'Onfro's Sons] had entered into a certain written contract with the Obligee [Lizza] dated the 26th day of July." At their conference Marino and Daniel D'Onfro discussed the suggested changes desired by D'Onfro's Sons. They reached a general but loose understanding, and each recognized there would have to be precise draftsmanship. The tenor of the conference indicated that the two men were considering possible amendments to a draft. Daniel D'Onfro at the end of the conference said he would be satisfied "if it is all put into the other contract." By this Daniel D'Onfro indicated he intended not to be bound except by precise words spelled out in a written agreement.

Marino prepared a new draft on July 27. D'Onfro's Sons rejected the draft. Lizza made no claim that there had been an overall oral agreement of which this draft was a memorial.

In the middle of August D'Onfro's Sons prepared a draft and procured a new bond from Hartford. This bond also recited: "the Principal has entered into a certain written contract with the Obligee dated the 26th of July, 1955."[2] Lizza received the bond and draft but never assented to the draft.

In September D'Onfro's Sons submitted another draft to Lizza. Lizza made deletions and thereafter signed it. D'Onfro's Sons never manifested assent to these deletions.

As a matter of ultimate fact no contract between the parties was made on July 26, 1955 or on any other date. This is based on the following considerations. On July 13, 1955 Ralph D'Onfro asked for a written draft. On July 19 Lizza sent a complicated document. The main theme of the July 26 conference was a set of possible amendments to the draft. As to these amendments there was no precise agreement. Marino's notations of "rewrite" and "reword" manifest an intention to do more than merely record a perfected agreement. Daniel D'Onfro's words at the conclusion of the conference manifest an intention not to be bound before the changes were put in writing and executed formally. After

---

1. Other defenses were alleged by D'Onfro's Sons and Hartford but the district court made no findings or conclusions in regard to these other defenses and they are not involved in this appeal.

2. The district court noted that there was no such document as that referred to in the bonds. It said also: "And I do not regard the recital as in any way indicating the D'Onfro partnership admitted that it had reached a complete oral agreement with Lizza on that date. As to the first two bonds the recital was made before the conference of July 26. And the third bond was sent by D'Onfro with Ex. 8 which reveals that the D'Onfro partnership was still taking the position that it would not be bound to Lizza until Lizza bound itself in writing to deliver stone for riprap."

the July 26 conference both parties acted as though each knew the other manifested an intention at the conference to be bound only by a solemnly executed writing. This is the most likely inference from the subsequent correspondence, the preparation of other drafts and the failure of either party to suggest that there had been a complete agreement.

Since Lizza and D'Onfro's Sons never manifested assent to any agreement there was no contract the performance of which Hartford could guarantee. Hartford is, therefore, not liable to the plaintiff on its bond.

In this appeal plaintiff alleges error (1) in various findings and conclusions of the district court in regard to any agreement between Lizza and D'Onfro's Sons and (2) in the district court's conclusion of no liability as to defendant Hartford.

■■ Plaintiff relies heavily on the testimony of Marino to demonstrate the error of the district court's findings that the purpose of the July 26 conference was to consider possible amendments to the draft and that Marino and Daniel D'Onfro reached only a "general but loose understanding" on those amendments. However, the testimony of Marino was clearly not credited by the district court, since Marino testified to complete agreement by Daniel D'Onfro to the changes precisely as made by Marino in the July 27 draft. Since this testimony was not credited by the district court and its rejection is not lightly to be overturned by an appellate court, F.R. Civ.P. 52(a), 28 U.S.C.A., we are not convinced that these findings of the district court were clearly erroneous. There is support for the view of the conference taken by the district court in the documents used at that conference and in the deposition of Daniel D'Onfro and the district court had an opportunity to observe the witness, Marino, and judge of his credibility.

Plaintiff also strongly contends that the district court erred in its inference from the testimony and the documentary evidence that Daniel D'Onfro manifested an intent not to be bound until the execution of a written document. Plaintiff further contends that there is error in the district court's inference of the same intent from the conduct of Lizza and D'Onfro's Sons subsequent to the conference of July 26. However, we do not believe that these inferences are unreasonable in view of the whole record. Nor are we persuaded that the inferences which plaintiff urges are more likely than those made by the district court. Accordingly we find no basis for rejecting the district court's inferences and the conclusions based on them.

Plaintiff argues that the district court erred in concluding that the bond executed in August accompanied the first draft drawn up by D'Onfro's Sons. It is true that there is no letter of transmittal referring to the bond, nor is it referred to in the acknowledgment of the draft. However, in the later correspondence concerning the propriety of the execution by D'Onfro's Sons, Ralph D'Onfro requested the return of drafts for proper signing and added: "You do not have to return the bond." This is sufficient evidence to support an inference of the bond's transmittal with the draft.

■ The plaintiff further contends that the return by D'Onfro's Sons of one copy of the contract draft containing the deletions made by Lizza constituted acceptance. However, the correspondence indicates that Marino wrote Ralph D'Onfro and stated in part of the letter: "Please be advised we are waiting the return of one copy of the executed contract." (Ex. 21) There was no further statement of the reason for wanting the copy. The draft had been signed by both D'Onfro's Sons and Lizza but no contract had resulted because of the deletions. Ralph D'Onfro transmitted a copy of the 'contract' with only the following comment: "At your request we herewith return one copy of contract." (Ex. 22) We do not believe that the district court's conclusion that no contract resulted was error in view

of the circumstances of this transmittal, and the subsequent demands of D'Onfro's Sons that a contract be completed. We certainly are not persuaded that by such an ambiguous return of a copy of the draft D'Onfro's Sons assented to the deletions and ended several months of involved negotiations.

■ Plaintiff has also argued that while the district court paid lip service to announced principles of law in deciding whether the parties made a contract on July 26, the court in reality applied principles more unfavorable to the plaintiff. However, we are convinced that the district court viewed the entire record to determine if the parties manifested an intent not to be bound until the execution of a formal written document. We conclude that the plaintiff's contention that the court surveyed the record to determine only whether the parties contemplated a written agreement is without merit. We are in agreement also with the district court's statement of the law applicable to this case in its opinion of May 29, 1959.

■ Plaintiff contends that even if there was no contract made between Lizza and D'Onfro's Sons, Hartford is still liable on its bond. The theory on which plaintiff relies is that Hartford is estopped to deny the existence of a contract since the bond recited that a contract had been entered by the parties.[3] However, the conclusions of the district court were that at the time of the July 26 conference both parties considered that they were discussing possible amendments to a draft of a contract, that after the conference both parties acted consistently with a knowledge that on July 26 there had been a manifestation to be bound only by a solemnly executed writing. These conclusions are adequately supported by the record, and in our view dispose of plaintiff's contention that

it rightfully relied on Hartford's recitation of the existence of a contract. It should be noted also that the district court concluded that the bond was transmitted with the draft prepared by D'Onfro's Sons, in which D'Onfro's Sons was still taking the position that it would not be bound until Lizza bound itself in writing to deliver stone for D'Onfro's Sons' use.

Judgment will be entered affirming the judgment of the district court.

■

3. The bond with which we are concerned is the one executed in August since Marino testified as to the two earlier bonds he remembered only that the amount was excessive. Marino said he did not know to whom they were written or anything else, not even whether there was one or two bonds. Certainly then these bonds furnished no basis for estopping Hartford from denying the existence of a contract between Lizza and D'Onfro's Sons.