SALVATORE SAVIGNANO *vs.* GLOUCESTER HOUSING
AUTHORITY.

Essex.    February 7, 1962. — July 3, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER,
& KIRK, JJ.

*Contract,* Building contract, Modification, Waiver, Performance and breach,
    Construction.    *Agency,* Scope of authority or employment.    *Housing.*

In an action against a Housing Authority by a contractor for extra work
    performed in constructing a housing project, a conclusion that the de-
    fendant's "clerk of works" had no authority to waive a provision of
    the construction contract that "no extra work shall be ordered . . .
    unless in pursuance of a written order from the Authority countersigned
    by the Architect . . . authorizing the extra work . . ., and no claim for
    an addition to the Contract amount shall be valid, unless so ordered,"
    was warranted where it merely appeared that the duties of the "clerk
    of works" "were to oversee the work and if any question arose . . .
    [whether] certain work was . . . required of . . . [the] contractor, he
    would tell the plaintiff to proceed, subject to written approval of the
    defendant's architect, and if so approved . . . a written change order,
    describing such additional work and fixing prices therefor, would be
    executed by the parties," and that the "clerk of works was authorized
    by defendant to instruct the plaintiff to proceed with work of the type
    . . . [involved in the extras in question] before a change order in writ-
    ing was issued and . . . the clerk of works did so instruct plaintiff to
    proceed."    [671–672]
In an action against a Housing Authority by a contractor for extra work
    performed in constructing a housing project, a conclusion that the de-
    fendant was not liable for such work was right where it appeared that
    the construction contract provided that "no extra work shall be or-
    dered . . . unless in pursuance of a written order . . . countersigned
    by . . . the Chairman . . . of the State Housing Board authorizing
    the extra work . . ., and no claim for an addition to the Contract
    amount shall be valid, unless so ordered," and that there was never any
    such written order nor waiver of the contract provision.    [672]
A provision of a housing project construction contract requiring the con-
    tractor to provide a watchman "both day and night, including Satur-
    days, Sundays and holidays," was unambiguous, and where the contrac-
    tor only provided a watchman "from 4 P.M. to . . . [midnight] seven
    days a week," there was a breach of the contract by him constituting
    a partial failure of consideration to the extent of the value of the
    watchman service not provided.    [673]

CONTRACT.    Writ in the Superior Court dated August 3,
1959.

Savignano *v.* Gloucester Housing Authority.

The action was heard by *Macaulay, J.*, on an auditor's report.

*Joseph M. Corwin* for the plaintiff.

*Donald J. Ross* for the defendant.

SPALDING, J.   In this action of contract the plaintiff seeks to recover for certain extra work performed and for amounts due under the contract.

The auditor, to whom the case was referred (facts to be final), found as follows: The plaintiff entered into a written contract with the defendant, dated December 26, 1957, for the construction of a State-aided housing project for elderly persons in the city of Gloucester. The contract price was $234,200. Twenty-one oral changes in the contract were ordered by the defendant's "clerk of works" and were performed by the plaintiff. The plaintiff received the contract price of $234,200, plus $22,356 for thirteen of the change orders approved by the defendant. The defendant refused to approve eight of the change orders, which the auditor found were extra work within the meaning of the contract. For the work covered by these orders the plaintiff claims $5,255. One of these items (No. 7) is now admitted by the defendant to be owed to the plaintiff.[1] Final payment on the contract was due on February 20, 1959.

The contract provided that: "Except in an emergency endangering life or property, no extra work shall be ordered and no change in the drawings, or Specification shall be made unless in pursuance of a written order from the Authority countersigned by the Architect and the Chairman or Director of the State Housing Board authorizing the extra work or change, and no claim for an addition to the Contract amount shall be valid, unless so ordered."

The auditor found that the duties of the defendant's "clerk of works" "were to oversee the work and if any question arose that certain work was or was not required of or by contractor, he would tell the plaintiff to proceed,

[1] This item is for caulking and amounts to $120. In addition to the above mentioned eight items the plaintiff sought to recover the sum of $1,000 for the erection of a temporary shed. The defendant withheld payment of this sum on the ground that plaintiff had not furnished it, but conceded before the auditor that it had been.

subject to written approval of defendant's architect, and if so approved then subject to similar approval and investigation by field engineers of State Housing Board, and the State Board itself, . . . a written change order, describing such additional work and fixing prices therefor, would be executed by the parties. In every such instance the approvals and writings just described took much time and long periods would ensue before any written change order was actually signed."

The "clerk of works was authorized by defendant to instruct the plaintiff to proceed with work of the type . . . [involved in the eight extras in question] before a change order in writing was issued and . . . the clerk of works did so instruct plaintiff to proceed." The "defendant refused to issue change orders in writing for said remaining eight changes after the work was done because the clerk of the works and the architect and defendant were of the opinion that the work called for in . . . [these] changes was required to be performed under the terms of the contract without additional compensation and because the work was done without the issuance of change orders in writing." The unapproved items involved work not required to be performed under the contract. "The plaintiff was required to complete all of said work in order to be paid and . . . the defendant would never have issued change orders in writing for any of the said work."

As provided by the contract, upon the architect's denial of the claim for extras, the plaintiff appealed to the Chairman of the State Housing Board, "whose decision shall be final." At the hearing on the appeal the Chairman stated that "he was concerned only with the question of whether the eight changes were over and above the contract requirements and that he would not hear evidence on the technical question of whether the work had been performed without the issuance of an order in writing,"; he did not rule on items 1–5, but strongly urged approval of items 6, 7, and 8.[1]

---

[1] Item 6 (for $650) related to thresholds; item 7 (for $120) was for caulking, and the defendant conceded that the plaintiff was entitled to this amount; item 8 (for $2,238.96) was for fill and loam.

On the basis of the foregoing findings the auditor, in so far as it was a question of fact, found that the plaintiff was entitled to recover for items 1–8 inclusive, in the sum (including interest) of $5,495.47.   He also found that the plaintiff was entitled to recover the $1,000 and interest admittedly owed by the defendant for the temporary shed furnished by the plaintiff.

The defendant withheld $3,504 from the contract balance on the ground that the plaintiff did not furnish the watchman service required by the contract.   Under the contract the plaintiff was required "to provide watchmen, both day and night, including Saturdays, Sundays and holidays."   The auditor found that "the plaintiff furnished the service of one watchman from 4 P.M. to . . . [midnight] seven days a week," and that this "was the amount and type of watchman service required by the contract."   The "defendant made no request to plaintiff to use additional watchmen nor was there any evidence . . . that [an] additional watchman was necessary or that defendant had incurred any financial loss to it or the premises and/or work in question by use of only one watchman."   The auditor concluded that defendant owes $3,504 plus 6% interest from February 20, 1959.

The judge, on the basis of the auditor's report, ordered judgment for the plaintiff on the two conceded items (shed and caulking) with interest, in the sums, respectively, of $1,080 and $129.60, thereby denying the claims as to seven extras and the claim for the $3,504 withheld for the alleged failure to furnish complete watchman service.   The plaintiff appealed.

1.   A contract provision requiring the written order of a housing authority for extras may be waived.   *Costonis* v. *Medford Housing Authy.* 343 Mass. 108, 113.   However, housing authorities have been likened to municipal corporations (*Costonis* v. *Medford Housing Authy., supra,* 115), and the existence of apparent authority in agents of such public bodies to waive the writing requirement is not readily assumed.   See *Stuart* v. *Cambridge,* 125 Mass. 102, 109–110; *Cashman* v. *Boston,* 190 Mass. 215, 219; *Millen* v. *Bos-*

*ton,* 217 Mass. 471, 473; *Crane Constr. Co.* v. *Commonwealth,* 290 Mass. 249, 253–254; *Lewis* v. *Commonwealth,* 332 Mass. 4, 6; *Costonis* v. *Medford Housing Authy., supra,* 115. We are of opinion that the facts found by the auditor warranted the conclusion (implicit in the order for judgment) that the defendant's "clerk of works" had no apparent authority to waive the writing requirement. The peculiar facts which were the basis for decision in the *Costonis* case are not present here. In that case the executive director, who was held to have authority to waive the approval provision, had much more authority, apparent and express, than the clerk of the works here.

There were findings that the defendant's agent "was authorized by defendant to instruct the plaintiff to proceed with work of the type set forth in the remaining eight changes before a change order in writing was issued and that the . . . [agent] did so instruct plaintiff to proceed," and that thirteen other oral changes ordered by the "clerk of works" were subsequently approved in writing in accordance with the contract. Doubtless, approval provisions of the sort here involved are onerous and tend to retard the work; but, unless modified or waived, a contractor who goes ahead without such approval does so at his peril. *Johnson* v. *Norcross Bros. Co.* 209 Mass. 445, 447.

Furthermore, aside from the question of the apparent authority of the agent to waive the written order required from the Authority, it is a sufficient basis for upholding the lower court's ruling for the defendant (at least as to items 1–5)[1] that there was never any written change order from the Chairman of the State Housing Board. The plaintiff properly does not contend that the defendant's "clerk of works" had any authority (apparent or actual) to waive the State Housing Board's written approval.

---

[1] Possibly this is a sufficient basis for upholding the ruling as to items 6 and 8 also. The State Housing Board strongly urged by letter payment by the Authority for these items, but it is not clear "whether the board was making a decision, or only recommending what the authority should do." *Wellesley Housing Authy.* v. *S. & A. Allen Constr. Co.* 340 Mass. 466, 471. Further, the Chairman of the State Housing Board made his "decision" without considering the "technical question of whether the work had been performed without the issuance of an order in writing."

2. In concluding that the plaintiff did not violate the contract in regard to the furnishing of watchman service, the auditor relied heavily on the subsequent conduct of the parties in interpreting the contract. But such conduct is properly taken into consideration only in cases where the language of the contract is ambiguous. *Anderson* v. *Sopp,* 295 Mass. 97, 102, and cases cited. *Central Trust Co.* v. *Rudnick,* 310 Mass. 239, 246. We are of opinion that the language here, requiring watchman service "both day and night," is unambiguous. Thus, on the auditor's finding that the plaintiff furnished a watchman for only eight hours a day, there has been a breach of the contract which constitutes a partial failure of consideration by the plaintiff. The plaintiff argues, however, that there is no basis in the auditor's report for the amount ($3,504) which the defendant was allowed to withhold. We agree. All that was before the court was the auditor's report which, since his findings of fact were final, constituted a case stated. It was the judge's duty to enter the correct judgment on the facts contained in the report. *Equitable Credit Corp.* v. *Treadwell,* 338 Mass. 99, 102. The auditor failed to make any finding as to the value of the watchman service not supplied by the plaintiff. There is, therefore, no basis in the report for the withholding by the defendant of the amount of $3,504. The plaintiff was entitled to findings on this point.

The order for judgment is set aside for the limited purpose of enabling the court to make further findings as to the value of the watchman's service; in other respects the order is correct. Whether these findings should be made by the court or by the auditor is for the court to determine.

*So ordered.*