*Northern District*
#6972

**TILLY D. THORNER, TRUSTEE
HARVEST REALTY TRUST**

**v.**

**SIDNEY STONE, d.b.a.
SID STONE RADIO LABORATORIES
NATIONAL SHAWMUT BANK
OF BOSTON, TRUSTEE**

Argued: Jan. 29, 1969     Decided: Mar. 11, 1969

*Present*: Brooks, P.J., Connolly, Yesley, J.J.

Case tried to *Cullen, J.* in the District Court of Newton #18698

*Brooks, P. J. This is an action of contract* in two counts. In count 1 plaintiff seeks to recover $248 as a portion of real estate taxes under a written lease dated December 18, 1958. In count 2 plaintiff seeks to recover $150 as attorney's fee in enforcing obligations under the lease. The answer is general denial and payment.

The court found for plaintiff on each count in the amount claimed.

At the trial there was evidence as follows:

Plaintiff as lessor and defendant as lessee entered into a written lease dated December 18, 1958 for a period of ten years. The lease contained the following clause,

"The Lessee is to pay as additional rent the amount by which the real estate taxes assessed by the city of Boston on the land and building leased hereby in any calendar year of the term hereof exceed those for the calendar year 1958. Said additional rent is to be paid upon receipt of a statement of such excess to the Lessee from the Lessor."

At the time the lease was executed, the 1958 real estate tax bill had been issued in the sum of $1,116 based on an assessment of $12,000.

Prior to the execution of the lease, plaintiff had filed an application for abatement of $2,000 on the 1958 real estate assessment reducing the amount of tax by $186. The abatement was granted reducing the 1958 tax bill to $930.

In the following years, 1959 through 1966 inclusive, defendant paid to plaintiff whatever tax increases occurred over the abated tax assessed for the year 1958. Defendant objected without success to paying the 1959 increase but made no further protest until the year 1967 when the real estate tax bill was $1178, an increase of $248 over $930, the abated tax in 1958.

At the close of the trial defendant filed the following requests for rulings of law:

1. In determining any additional rent due the plaintiff for the year 1967 under Paragraph III (1) the taxes assessed for the year 1958, prior to any abatement, is to be considered as the base amount.

2. Where the lease in question is silent concerning any abatement for the taxes assessed for the year 1958, the abatement is not to be read into the lease and is not to be considered in determining the taxes assessed for the year 1958.

3. The taxes assessed for the calendar year 1958 on the date of the execution of the lease, namely, December 18, 1958, are the taxes to be considered in determining any additional rent under Paragraph III (1) of said lease.

4. The plaintiff is not entitled to recover under Count 2 because there is no obligation as claimed in this action, of the defendant under said lease.

5. The clause in question in said lease is free from ambiguity.

6. Inasmuch as the lease was drawn by the plaintiff, the same is construed strongly against the plaintiff. *Bowser* v. *Chalifour*, 334 Mass. 348. *Mass. Turnpike Authority* v. *Perini Corp.*, 349 Mass. 448. *Bay State Smelting Co.* v. *Ferric Industries*, 294 F. 2nd 96.

7. Since the plaintiff drew the lease in question and had filed an application for an abatement for the 1958 taxes prior to the execution of said lease, the failure of the plaintiff to refer to the application for abatement prohibits the court from using the abated taxes in determining the 1958 base tax bill.

8. In the construction of this lease, words are to be given their plain meaning where no inconsistency results or there is no controlling indication in the instrument of other intent. *Forte* v. *Caruso,* 336 Mass. 476. *Zarum* v. *Brass Mill Material Corp.,* 334 Mass. 81.

9. The subsequent conduct of the parties is not to be taken into consideration in interpreting the terms of this lease, inasmuch as the language is not ambiguous.

10. The fact that the defendant paid certain amounts for taxes in the past, due to threats of lawsuit, should not be taken into consideration in interpreting the terms of this lease. *Savignano* v. *Gloucester Housing Authority,* 344 Mass. 668.

11. The defendant has previously paid the plaintiff the amount by which the taxes for the year 1967 exceed those for the calendar year 1958.

The court denied defendant's requests for rulings ##1, 2, 3, 4, 5, 7, and 11 and allowed defendant's requests for rulings ##6, 8, 9, and 10 and made the following findings of fact:

"The assessed value of the land and building for the calendar year 1958 was $10,000.00 (Ten Thousand Dollars). The real estate tax paid for 1958 was $930.00 (Nine Hundred and Thirty Dollars). The defendant failed to comply with all the terms of the lease."

Defendant claims to be aggrieved by the refusal of the Court to grant his requests for rulings ##1, 2, 3, 4, 5, 7, and 11, and by the finding of fact.

The issue can be simply stated. Was the trial judge wrong in holding that the base from which the tax increase should be annually calculated was the tax as finally assessed for the year 1958, to wit $930, or the original tax for that year before abatement, to wit $1178?

Defendant argues that the tax already announced when the lease was executed must have been the tax the parties had in mind. On the other hand it is equally plausible to say with the court, — where, as here, the lessee knew when he signed the lease that application had been filed for abatement, that the final tax should be the correct base for computing future tax increases.

Where there are two or more possible interpretations of language, it is important to

ascertain the intention of the parties. *Berkal v. M. DeMatteo Construction Co.,* 327 Mass. 329, 333. *Stop & Shop v. Ganem,* 347 Mass. 697, 701. The main clue we have here as to intention is the conduct of the parties. After an initial protest on receipt of the 1959 tax increase, defendant paid it. After that for seven years defendant paid the increases on the same base and so far as appears, without protest.

The language in the lease speaks of "the taxes ... assessed by the city of Boston ... for the calendar year 1958." Without more, that would seem to mean the tax as finally assessed. Normally when a tax is referred to, the assumption is that it is the ultimate tax of that year.

Parties are bound by the language they employ, reasonably interpreted. If such interpretation turns out to a party's disadvantage, that is his misfortune. A case illustrating this sort of predicament is *Gaston v. Gordon,* 208 Mass. 265, where defendant rented a store by written lease for three years. He was hoping to secure a license to sell intoxicating liquors. The license was refused, whereupon defendant gave notice to plaintiff, did not enter into occupation under the lease and refused to pay rent. Defendant contended that it was an implied condition of the entire lease that the lessee should be able to procure a license and if he failed he should not be bound. There was nothing in the lease to suggest that it was in

any way conditional upon the lessee acquiring
the right to sell intoxicating liquors. The court,
in pointing out that defendant could have pro-
tected himself against the box in which he found
himself, said at page 269:

"The lessee has bound himself in unmis-
takable language to pay the rent without
any qualification dependent upon his fail-
ure to obtain the necessary authority from
public officers. Although this mischance
renders it impossible for him to make val-
uable use of property which was contem-
plated, that was a contingency which ought
to have been foreseen, and some anticip-
atory provision of partial or entire exon-
eration from liability inserted in the lease
if such was the intention of the parties.
There appears to be no more reason to
imply such condition in this lease than to
say that the burning of a building ends a
lease of land and buildings. Yet nothing
is better settled in the law of landlord and
tenant than that, in the absence of special
stipulation, there is no abatement of rent
in case a building upon leased premises is
ruined by fire ... The reason for this rule
is that an express and unqualified obliga-
tion voluntarily incurred ought to be en-
forced ... The fact that by reason of the
refusal of the public board to act favor-
ably to the defendant, for which the land-
lord is in no wise responsible, the value of

the estate to the tenant has been greatly diminished, will not excuse him from performing what is required of him."

See also *Hiller* v. *Submarine Signal Co.,* 325 Mass. 546, a case involving compensation for services. The court said, at page 550:

"The construction of a written contract which is plain in its terms and free from ambiguities presents a question of law to the court ... The parties are bound by the plain terms of their contract. *Gaston* v. *Gordon,* 208 Mass. 265, 269. *Kochland* v. *Columbia Ins. Co.,* 237 Mass. 467, 472. *Mechaber* v. *Pittle,* 270 Mass. 193, 198. Whereas here its terms are openly and fairly arrived at enforcement will not be denied because of hardship to one of the parties. *Gaston* v. *Gordon,* supra. *Bowker* v. *Torrey,* 211 Mass. 282, 287. *Nickerson* v. *Bridges,* 216 Mass. 416, 421."

Defendant argues that the trial judge's allowance of his request #9 barring consideration of conduct as a factor prevents us from considering it in relation to intention of the parties. The trial judge apparently took the position that there was no ambiguous language in the lease before us. On that supposition he was correct in his ruling. However, it is our opinion that there was ambiguity in the language which required clarification and that such clarification was provided by considera-

tion of the subsequent conduct of the parties, namely, — seven years of payment of the tax as interpreted by plaintiff. Having arrived at the conclusion that plaintiff is entitled to recover on Count 1, we have to allow recovery on Count 2 in view of the provision on page 2 of the lease, Clause 4, subsection k:

> "to pay the lessor's expense, including reasonable attorney's fees, incurred in enforcing any obligations of this lease which are not complied with;"

It could hardly be contended that the amount claimed, $150.00, is excessive.

We find no prejudicial error in the finding of the court and disposition of the requests for rulings. **Report dismissed.**

PAUL LEVENSON
    for plaintiff
LEO GORDON
    for defendant.