In re Philip B. McCOURT, Jr., Debtor.

BARDAN COMPANY, INC., Plaintiff,

v.

Philip B. McCOURT, Jr., Defendant.

Bankruptcy No. 80–0174–L.
Adv. No. A80–203–L.

United States Bankruptcy Court,
D. Massachusetts.

May 17, 1982.

Lee Barron Wernick, Norwood, Mass., for plaintiff.

Martin M. Wood, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER RE MOTION FOR SUMMARY JUDGMENT, MOTION FOR ATTORNEY'S FEES AND MOTION FOR DISMISSAL FOR FAILURE TO PROSECUTE.

THOMAS W. LAWLESS, Chief Judge.

Before the court is the Defendant's motion for summary judgment in this action to determine the dischargeability of a debt.

On February 7, 1980, the Debtor—Defendant, Philip B. McCourt, Jr. filed a petition under Chapter 7 of the Bankruptcy Code. On April 8, 1980, the Plaintiff, Bardan Company, Inc. filed a complaint to determine the dischargeability of a particular debt under 11 U.S.C. § 523(a)(2)(A). Plaintiff's complaint alleges fraud and misrepresentation on the part of the Debtor. Subsequently, the Defendant filed motions for summary judgment, for dismissal for failure to prosecute and for attorney's fees. A hearing was held on January 13, 1982 and a record transcribed. Based upon the record, pleadings, affidavits and submissions of the parties, the undisputed facts are as follows:

The Debtor is an attorney who, prior to his bankruptcy, earned a substantial portion of his income through business and real estate investments. Sometime prior to 1977, the Debtor and two other parties, John McDonald and Edmund A. Blondin, purchased a twenty-four unit apartment complex in Wareham, Massachusetts. In order to finance the purchase of this property, they gave a mortgage in the amount of $250,000.00 to the Taunton Cooperative Bank ("the Bank"). As a result of numerous vacancies in the apartment buildings, the financial situation of the business venture became desperate. The owners owed approximately $50,000.00 for unpaid real estate taxes and they fell into arrears on their mortgage payments to the Bank. In 1977, the Bank commenced foreclosure proceedings on the property but, since it was apparent that there would be a large deficiency if the property was sold at a foreclosure sale, the Bank's President recommended that the investor group attempt a private sale of the property. The Debtor found a willing buyer in the Plaintiff. The Plaintiff's owner Donald E. Striar, indicated that Bardan Company would pay $285,000.00 for the property. The property was deeded to the Bank and then sold to the Plaintiff for $250,000.00. At the time of this sale, the outstanding liabilities on the property totalled $35,069.04. On September 12, 1977, the Plaintiff, the Debtor, McDonald and Blondin entered into an agreement whereby the three former owners executed a promissory note under the terms of which they were jointly and severally liable to the Plaintiff for $35,069.04. The Plaintiff then loaned that amount of money to the three codebtors to enable them to pay the remaining liabilities on the apartment complex so that the Plaintiff could take the property free and clear of encumbrances. Blondin, who had been inactive in the operation of the apartment building for quite some time, requested that the Debtor and McDonald agree to limit his liability on the note to Plaintiff. Consequently, the three codebtors entered into a separate indemnity agreement which provided that Blondin's liability on the note was limited to $4,800.00 and that the Debtor and McDonald would pay the remaining balance on the note and indemnify Blondin against the payment of the note. The Plaintiff was unaware of this indemnity agreement. A few months later, the codebtors defaulted on the payments due under the note. On May 12, 1978, the Plaintiff commenced an action in state court against the codebtors which was based upon their joint and several liability on the note. Blondin filed an answer to the Plaintiff's complaint and raised the defense that Blondin's liability on the note was obtained through the fraud and deceit of the Debtor and McDonald. In addition, Blondin filed a crossclaim which alleged fraud and deceit on the part of his codebtors. It was at this point in time that the Plaintiff became aware of the indemnity agreement between the codebtors. The Debtor and McDonald never answered the Plaintiff's complaint or Blondin's crossclaim

and were defaulted. The Plaintiff eventually settled its case with Blondin for approximately $15,000.00. Both the Debtor and McDonald later filed for bankruptcy.

The Plaintiff maintains that, when it loaned funds to the Debtor, it forewent any further investigations because it relied upon the Debtor's representation that all three cosigners were jointly and severally liable on the promissory note. Plaintiff contends that this representation was false and fraudulent because the codebtors had entered into a separate indemnification agreement which absolved Blondin from liability on the note.

■ Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A) provides in relevant part: "A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt... for obtaining money, property, services or an extension, renewal, or refinance of credit, by... false pretenses, a false representation, or actual fraud...." In order for a debt to be nondischargeable under this provision, it must be shown that: (1) the debtor made a false representation; (2) known at the time to be false; (3) made with the intention and purpose of deceiving the creditor; (4) which was reasonably relied upon by the creditor; and (5) which resulted in loss or damage to the creditor. *In re Schlickmann,* 6 B.R. 281 (Bkrtcy., D.Mass.1980); *In re Kojoyian,* 7 B.R. 719 (Bkrtcy., D.Mass.1980).

■ Rule 56(c)[1] of the Federal Rules of Civil Procedure regarding summary judgment provides in part as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of proving the absence of any genuine issue of fact on every relevant issue raised in the pleadings. *In re Schuck,* 13 B.R. 461 (Bkrtcy.M. D.Pa.1980). The Debtor has met this burden in the instant case.

It is apparent from the facts that the Debtor never made a misrepresentation. The Debtor stated to the Plaintiff that all three cosigners would be jointly and severally liable on the promissory note. That is exactly what occurred. The Debtor, Blondin and McDonald signed the note. The note expressly provided for joint and several liability. Thus, Blondin was jointly and severally liable on the note.

[3] Since the Plaintiff was not a party to the indemnification agreement between the codebtors, that agreement was not binding on the Plaintiff, nor did it affect the Plaintiff's rights under the promissory note. In order to bind a third person contractually, an expression of assent by such person is necessary. *Lizza & Sons, Inc., v. D'Onfro,* 282 F.2d 175 (1st Cir. 1960); *Durfee & Canning v. Socony-Vacuum Oil Co.,* 91 F.Supp. 819 (D.Mass.1950); *Johnson v. Norcross Bros. Co.,* 209 Mass. 445, 95 N.E. 833 (1911); *Stoddard v. Ham,* 129 Mass. 383, 37 Am.Rep. 369 (1880). In *Coast Fisheries Co. v. Linen Thread Co.,* 269 F. 841, at 844 (D.Mass.1921), the court stated:

> [I]t is clear that in private affairs everybody has the right to choose with whom he will contract or not contract, and that one person cannot be put into contractual relations with another with whom he has refused to deal by any arrangement or understanding between the other person and a third person.

Regardless of the indemnification agreement and barring any misconduct on its own part, the Plaintiff could have prosecuted its state court action against Blondin and obtained a judgment against him for the full amount owed on the note. *See e.g. Farrell v. Chandler, Gardner & Williams, Inc.,* 252 Mass. 341, 147 N.E. 822 (1925). If the Debtor deceived Blondin, as to the extent of Blondin's liability to the Plaintiff, that would not have precluded Plaintiff, as an innocent third party, from enforcing its

---

**1.** Rule 756 of the Rules of Bankruptcy Procedure incorporates Fed.R.Civ.Pro. 56(c).

rights under the promissory note. *Commissioner of Banks v. Cosmopolitan Trust Company & others*, 253 Mass. 205, 148 N.E. 609, 41 A.L.R. 658 (1925); *Nash v. Minnesota Title Ins. & Trust Co.*, 163 Mass. 574, 40 N.E. 1039 (1895). However, the Plaintiff chose to settle its state court case against Blondin for a lesser amount than it was owed. The instant dischargeability action is an attempt to collect the balance from the Debtor.

The Plaintiff has the burden of proving all five elements of the nondischargeability test set forth above. *In re Kojoyian, supra.* The Plaintiff, as a matter of law, cannot establish the first element of this test and its failure to do so is decisive of this action. The Debtor must prevail on his motion for summary judgment.

In view of the court's determination regarding the Debtor's motion for summary judgment, a determination of the Debtor's motion for dismissal for failure to prosecute is unnecessary.

The Debtor also filed a motion for attorney's fees stating as grounds therefore that the Plaintiff's action is frivolous and brought in bad faith.

11 U.S.C. § 523(d) provides as follows:

If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

This provision protects an honest consumer debtor against a creditor who initiates an action to have a debt excepted from discharge because of the debtor's alleged fraud. 11 U.S.C. § 101 defines a consumer debt as a "debt incurred by an individual primarily for a personal, family, or household purpose." The debt at issue in the case at hand is not a consumer debt, therefore, § 523(d) does not apply. Absent the mandate of § 523(d), the equities do not warrant an award of attorney's fees against the Plaintiff. Accordingly, the Debtor's motion for attorney's fees is denied.