COMMONWEALTH vs. EDWARD E. BROWN
(and two companion cases[1]).

Bristol. May 6, 1983. — February 14, 1984.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Statute,* Construction. *Conspiracy. Public Works,* Bidding procedure.
*Words,* "Construction."

Defendants charged with conspiring to violate the competitive bidding re-
quirements of G. L. c. 43, § 28, with respect to a number of contracts
for repair and resurfacing of existing roofs of a city's public schools
were entitled to required findings of not guilty, inasmuch as contracts
for repairs were not contracts for "construction work" subject to the
competitive bidding requirements of § 28 as in effect during the rele-
vant periods. [158-163]

INDICTMENTS found and returned in the Superior Court
Department on September 18, 1979.

The cases were tried before *Byron, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Henry P. Sorett* for Edward E. Brown.
*Douglas B. Weilding* for Walter Geraghty.
*Geoffrey Packard* for Joseph Nardozza.
*Patricia O. Ellis & Phillip L. Weiner,* Assistant District
Attorneys, for the Commonwealth.

O'CONNOR, J. The defendants were convicted by a jury
of conspiring to violate the provisions of G. L. c. 43, § 28,
which prohibit the award of certain contracts by a city
without competitive bids. The conspiracy was alleged in
the indictments to have taken place between April, 1974,
and August, 1979. Sentences were imposed. The defend-

---

[1] One is against Joseph Nardozza and the other is against Walter Geraghty.

ants appealed. Execution of the sentences was stayed pending appeal. The defendants also appealed from the denial of several posttrial motions. We transferred the case to this court on our own motion. We hold that denial of the defendants' motions for required findings of not guilty, presented at the close of the Commonwealth's case and at the close of all the evidence, was error, and we reverse the convictions. The basis of our holding is that the contracts at issue were not subject to the competitive bidding requirements of G. L. c. 43, § 28. In view of our holding it is unnecessary for us to consider numerous other issues presented by these appeals.

General Laws c. 43, § 28, as amended through St. 1974, c. 199, § 2, in effect throughout the periods relevant to these indictments, provided that "[n]o contract for construction work or for the purchase of equipment, supplies or materials, whether for repairs or original construction, the estimated cost of which amounts to two thousand dollars or more . . . shall be awarded unless [certain bidding procedures are followed] . . . . No bill or contract shall be split or divided for the purpose of evading any provision of this chapter." The jury could have found the following facts from the evidence most favorable to the Commonwealth. The defendant Brown was superintendent of public buildings for the city of Taunton during the period of the alleged conspiracy. The other defendants, as well as Frederick Randall and Richard Grassley,[2] were roofers. Between April, 1974, and December, 1977, Brown awarded the defendant Nardozza at least fifty contracts to repair and resurface existing roofs of four Taunton public schools. There were no competitive bidding procedures. The work was done by Nardozza and Nardozza was paid for it, but the city's records showed that the contracts were awarded, and payments were made, to Randall, Grassley, and the defend-

---

[2] Frederick Randall was indicted as a coconspirator and his trial was joined with the trials of the defendants herein. During the trial, the judge declared a mistrial as to Randall because of ill health. Richard Grassley was named in all the indictments as an unindicted coconspirator.

ant Geraghty. The amount invoiced for each job was under $2,000, and in almost every instance it was almost that much. Charges for equipment, supplies or materials were included in only four invoices and they totalled $653.50. From this evidence and from evidence of the nature of the work performed pursuant to the several contracts, the jury could have found that the defendants conspired to divide the roofing projects into small units in order to evade bidding requirements that they either thought had been imposed, or thought might have been imposed by G. L. c. 43, § 28.

However, it was not enough for the Commonwealth to show that the defendants attempted to evade bidding procedures that they *thought* were required by G. L. c. 43, § 28. The burden was on the Commonwealth to prove that the defendants combined for a purpose, or contemplated the use of a method, that was *actually* prohibited by G. L. c. 43, § 28. See *Commonwealth* v. *Bessette (No. 1)*, 351 Mass. 148, 153-154 (1966); *Commonwealth* v. *Bessette (No. 2)*, 351 Mass. 157, 162 (1966). The Commonwealth, therefore, was required to prove that the contracts that were awarded were for "construction work or for the purchase of equipment, supplies or materials, whether for repairs or original construction, the estimated cost of which [amounted] to two thousand dollars or more" within the meaning of that language in the statute. There was no evidence that the contemplated contracts would provide for equipment, supplies, or materials, the total estimated cost of which was $2,000 or more, to be furnished to the city. This case, therefore, is unlike *Datatrol, Inc.* v. *State Purchasing Agent,* 379 Mass. 679, 696 & n.14 (1980), in which we held that a contract for personal services was subject to the bidding requirements of G. L. c. 7, § 22, because it was incident to a procurement of equipment for which bidding was required. We are confronted with the limited question whether "construction work," not defined in the statute, includes the repair and resurfacing of roofs on existing buildings. In answering that question, we are guided by the principle that criminal statutes must be strictly construed. *Common-*

*wealth* v. *Gagnon,* 387 Mass. 567, 569 (1982). *Commonwealth* v. *Devlin,* 366 Mass. 132, 137 (1974).

If the Legislature intended the statutory phrase "whether for repairs or original construction" to refer to contracts for construction work as well as to contracts for the purchase of equipment, supplies, or materials, it would necessarily follow that the Legislature meant "construction work" to include repairs. However, if the phrase refers only to contracts for the purchase of equipment, supplies, or materials, it sheds no light on the meaning of "construction work" and we must look elsewhere for assistance in construing that term. We conclude that the modifying phrase refers only to contracts for the purchase of equipment, supplies, or materials. In doing so, we rely not only on the rule of strict construction of criminal statutes, but also on "the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Moulton* v. *Brookline Rent Control Bd.,* 385 Mass. 228, 230-231 (1982), quoting *Hopkins* v. *Hopkins,* 287 Mass. 542, 547 (1934). *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 133 (1949). We are not satisfied that the subject matter or dominant purpose of G. L. c. 43, § 28, requires that the modifying clause not be confined to the last antecedent in keeping with the general rule.

The Commonwealth argues that the statute's clear purpose requires that "construction work" be construed to include roof repair and resurfacing. The argument is that G. L. c. 43, § 28, is but one of many competitive bidding statutes, all of which must be interpreted harmoniously to further a common purpose: establishing fair competition and obtaining the lowest available prices from responsible bidders for public projects. See *Interstate Eng'g Corp.* v. *Fitchburg,* 367 Mass. 751, 757-758 (1975). The Commonwealth observes that competitive bidding on contracts for the repair of public buildings is no less relevant to these objectives than competitive bidding on original construction.

Our attention is directed to several statutes, all of which
were enacted substantially later than 1915, the year that
G. L. c. 43, § 28, was enacted. See St. 1915, c. 267, § 28.
For instance, G. L. c. 29, § 8A, as appearing in St. 1980,
c. 579, § 52, requires competitive bidding on contracts with
the Commonwealth *for the construction, reconstruction,
alterations, repair or development* at public expense of any
building, road, bridge or other physical property if the
amount involved therein is one thousand dollars or over"
(emphasis added). The emphasized language has been part
of § 8A since its enactment in 1939. See St. 1939, c. 427.
General Laws c. 30, § 39M (*a*), as amended through St.
1977, c. 970, § 1, provides: "Every contract for the con-
struction, reconstruction, alteration, remodeling or repair
of any public work, or for the purchase of any material . . .
by the commonwealth, or political subdivision thereof, or
by any county, city, town, district, or housing authority,
and estimated by the awarding authority to cost more than
five thousand dollars in the case of the commonwealth, or
political subdivision thereof, and more than two thousand
dollars in the case of any other such awarding authority,
shall be awarded [only pursuant to specified bidding proce-
dures]." General Laws c. 149, § 44A, as amended by St.
1967, c. 899, required bidding on certain contracts "for the
construction, reconstruction, alteration, remodeling, repair
or demolition of any public building." General Laws c. 149,
§ 44A, as appearing in St. 1980, c. 579, § 55, requires com-
petitive bidding on "[e]very contract for the construction,
reconstruction, installation, demolition, maintenance or re-
pair of any building by a public agency estimated to cost
more than five thousand dollars." The Commonwealth
reasons that these statutes, focusing on reconstruction,
alteration, repair, remodeling, and the like, in addition to
construction, manifest a legislative policy to require com-
petitive bidding on public contracts for a broad range of
activities which includes the repair and resurfacing of roofs
of public schools. The Commonwealth concludes that the
term "construction work" in G. L. c. 43, § 28, must be con-

strued to include roof repairs and resurfacing in order to effectuate that policy.

We do not agree that the intent of the Legislature in 1915, in enacting G. L. c. 43, § 28, is revealed by statutes enacted many years later when the range of legislative concern may well have expanded to include contracts that were not the concern of the earlier Legislature. If the more recent statutes, relied on by the Commonwealth, are indicative of anything relevant to our inquiry, it is that the meaning of the terms "construction" and "construction work" is imprecise, and that a Legislature may give those terms a narrow meaning that excludes repairs and roof resurfacing. Since a statute should be interpreted so as to give meaning to all the words when possible, *Commonwealth* v. *Wood's Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 352 Mass. 617, 618 (1967), the word "construction" in the later statutes must be construed not to include such words as "reconstruction," "alteration," "repair," or "remodeling." These words would be superfluous if they were included within the meaning of "construction" in those statutes.

The Commonwealth's best argument may be that if the word "construction" in G. L. c. 43, § 28, is interpreted to mean only original construction work, the word "original" in the phrase "whether for repairs or original construction" becomes superfluous. This, the Commonwealth contends, suggests that the word "construction" was intended to be construed broadly. The difficulty with the Commonwealth's position is that "[i]t is a fundamental tenet of due process that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *United States* v. *Batchelder*, 442 U.S. 114, 123 (1979), quoting *Lanzetta* v. *New Jersey*, 306 U.S. 451, 453 (1939). See *Commonwealth* v. *Gagnon, supra* at 569. Even though resort to a rule in aid of statutory construction may give some support to an interpretation of the term "construction work" that is broader than "original construction," the statute does not give clear warning that it applies to the repair and resurfacing of roofs on existing buildings. Dic-

tionary definitions confirm this conclusion. Webster's Third New Int'l Dictionary at 489 (1961) defines "construction" as "the act of putting parts together to form a complete integrated object: [synonymous with] fabrication." Black's Law Dictionary at 283 (5th ed. 1979) states that "construction" means "[t]he creation of something new, as distinguished from the repair or improvement of something already existing."

Throughout the period covered by the indictments, G. L. c. 43, § 28, did not make criminal or unlawful the award by a city, or the splitting, of contracts to repair or resurface the roofs of existing buildings without competitive bidding.[3] The evidence, therefore, did not warrant findings that the defendants conspired to violate the provisions of G. L. c. 43, § 28.

The judgments as to all defendants are reversed, the verdicts set aside, and the indictments dismissed.

*So ordered.*

---

[3] General Laws c. 43, § 28, was amended by St. 1980, c. 579, § 54. This decision is limited to the period covered by the indictments.