**BOSTON HELICOPTER CHARTER, INC., Martin Cole, Mark Carney, Patrick Carney, Robert Medeiros, Hugh Carney, Paul Cusson and Mary Thornton, Plaintiffs,**

v.

**AGUSTA AVIATION CORPORATION, B.L. Jet Sales, Inc., and Costruzioni Aeronautiche Agusta, S.p.A., Defendants.**

Civ. A. No. 89–2605–C.

United States District Court,
D. Massachusetts.

June 20, 1991.

366

Frank C. Corso, Sarrouf, Tarricone & Felmming, Boston, Mass., for plaintiffs.

Gerald Tutor, Corrigan, Johnson & Tutor, Boston, Mass., Chad Browne, Chalres F. Clark, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for Hydroplanes, Inc. f/k/a Jet Sales.

Brian P. Voke, Campbell & Assoc., Cambridge, Mass., Rudolph V. Pino, Patricia A. Fried, Condon & Forsyth, New York City, for Agusta Aviation Corp. and Construzioni Aeronautiche Agusta S.p.A.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action arises out of the sale, resale, and eventual crash of an Agusta A109 helicopter. Defendant Costruzioni Aeronautiche Giovanni Agusta S.p.A. ("CAGA") is the Italian manufacturer of the helicopter, and defendant Agusta Aviation Corporation ("AAC")[1] is its subsidiary responsible for marketing, distribution and support of CAGA products in North America. AAC sold the helicopter to co-defendant Hydroplanes, Inc.,[2] who in turn sold it to the plaintiff, Boston Helicopter Charter, Inc. ("Boston Helicopter"). Boston Helicopter

1. Agusta Aviation Corporation is currently known as Agusta Aerospace Corporation.

2. Hydroplanes was formerly known as B.L. Jet Sales, Inc.

and the individuals injured in the accident[3] filed this action against all three defendants. Hydroplanes then filed a cross-claim against CAGA and AAC for indemnity. CAGA and AAC responded with a cross-claim against Hydroplanes for indemnity and contribution, alleging negligence against Hydroplanes in its maintenance and operation of the helicopter. The case is currently before this Court on AAC's and CAGA's motion for partial summary judgment on Boston Helicopter's warranty claims, and on Hydroplanes' motion for summary judgment on its claim seeking indemnity from AAC and CAGA.

## I.

The following facts are undisputed, except where otherwise indicated. Defendant AAC sold the 109A helicopter to Hydroplanes on May 4, 1984 for $1,000,000.00. Hydroplanes did not take delivery of the helicopter until July 26, 1984. The purchase agreement between AAC and Hydroplanes contained the following warranty:

**6. Warranty**

**a. New Equipment.** The Equipment is purchased subject to Seller's standard warranty which is as follows:

Seller hereby warrants to the original purchaser only each new helicopter and part thereof sold by Seller to be free from defects in material and workmanship under normal use and service, Seller's obligation under this warranty being limited to replacing or repairing such part at its designated place of business, with the charges payable by Purchaser for such repair or replacement to be pro-rated for hours of use against the established life of the part or 2,000 hours, whichever is the lesser (with no charges being payable to Purchaser in the event of repair or replacement within the first 500 hours of use), provided that such part shall have been returned to Seller's designated place of business, with transportation charges prepaid, within 1,000 hours of operation or one year, whichever shall first occur, after delivery of such part to the original purchaser, and provided further that Seller's examination shall disclose, to Seller's satisfaction, such part to have been defective. THIS WARRANTY IS GIVEN EXPRESSLY AND IN PLACE OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES, INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND THIS WARRANTY IS THE ONLY WARRANTY MADE BY SELLER OR THE AGUSTA GROUP. The obligations of Seller under this warranty are limited to the repair of helicopter parts as provided herein and liability is excluded for incidental or consequential damages, including without limitation, damage to the helicopter or other property, and costs of expenses for commercial losses or lost profits due to loss of use of grounding of the helicopter or otherwise.

The 500 hour period for free replacement was substituted by the parties in lieu of a standard 200 hour provision. Moreover, the agreement between AAC and Hydroplanes provided that the warranty was transferrable.[4]

More than one year later, on October 31, 1985, Hydroplanes entered into a purchase and sale agreement through which it agreed to sell the helicopter to the plaintiff, Boston Helicopter, for approximately $875,-000.00.[5] Paragraph 14I of the purchase and sale agreement between Hydroplanes and plaintiff provided for the transfer of the warranty to plaintiff. This provision read as follows:

Seller agrees that it shall be a condition of closing that Seller shall deliver to Buyer at closing all documentation necessary to transfer to Buyer the extended facto-

---

**3.** The individuals' claims are not involved in the current motion.

**4.** There is nothing in the material submitted by the parties that indicates what, if anything, Hydroplanes paid for this extension from 200 to 500 hours.

**5.** The Aircraft Purchase and Sale Agreement was actually between B.L. Jet Sales (now Hydroplanes) and Claremont Financial Services, Inc. "or its nominee." Boston Helicopter is listed as the purchaser in the Aircraft Bill of Sale.

ry warranty, on which there are approximately 200 hours of Aircraft operation time remaining, which extended factory warranty is equivalent to the factory warranty offered with a new aircraft of this type and model. Seller agrees, at the time of closing, to deliver to Buyer such evidence as is reasonably required by Buyer to satisfy Buyer that the transfer of warranty will be recognized by the Agusta Aviation Corporation.[6]

In accordance with its obligation under this paragraph of the purchase and sale agreement, Hydroplanes executed a document by which it authorized AAC to transfer the balance of the warranty to plaintiff. This document, dated November 19, 1985, stated that the balance of the warranty as of that date was "approximately 200 hours." At the bottom of the same document, however, the following was written: "Balance of Warranty at November 19, 1985 is 185.1 hours." A representative of AAC initialed the document, indicating that the "Assignment of Warranty" had been "Confirmed & Accepted." The plaintiff took delivery of the helicopter on that same day. Plaintiff contends that it never received a copy of the warranty; for purposes of this motion, this Court assumes that such is the case.

The plaintiff did, however, make use of this warranty. By a letter dated January 10, 1986, plaintiff notified AAC of its appointment of North Atlantic Air, Inc. as its warranty claims agent. According to the affidavit of James Minogue, the customer service manager and warranty administrator, plaintiff made 33 claims from January 10, 1986 until December 30, 1986. The claim forms have a place to note the number of hours the helicopter had been in flight. It appears that AAC honored one claim when the helicopter had a total aircraft operation time of 504 hours. In addition, on several of these claims forms, although CAGA had made a notation that "the warranty has expired due to calendar limits," AAC honored the claim under what it referred to on the forms as the "AAC

Agreement," or "AAC Special Warranty." (See Defendants' Exhibit 7).

The accident took place on January 13, 1987, when the helicopter had a total operation time of 566.8 hours. According to the factual report of the National Transportation Safety Board, the helicopter experienced a tail rotor blade failure shortly after liftoff from the helipad while hovering at twenty-five feet. The rotor blade that failed had a certified expected life of 1,400 hours. A certified expected life refers to the period of time that the certifying authorities permit the part to remain in use. (See Plaintiff's Exhibit L, Deposition of Paolo Ferreri at 115). The pilot attempted to set the helicopter down on the helipad, but made a hard landing. According to an estimate prepared by the defendants, it would cost $1,015,447.90 to repair the helicopter.

## II.

The first motion to be addressed is that by AAC and CAGA for partial summary judgment on Counts VII, VIII, IX, X, XI, XII, XIII, LXXVIII and LXXVIX of the plaintiff's amended complaint, which allege the following claims: breach of express warranty by AAC and CAGA; breach of implied warranty by AAC and CAGA; breach of warranty of fitness for a particular purpose by AAC and CAGA; failure of the warranty to achieve its essential purpose against AAC only; and violation of Mass. Gen.L. ch. 93A against AAC and CAGA. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*,

---

**6.** The next paragraph of the purchase and sale agreement provided that "Seller agrees at closing to deliver to Buyer all Aircraft records and logs including ... warranties ... all of which shall be complete, up to date and in compliance with all FAR's and other applicable regulations."

398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). One way of meeting this burden is by showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553. Once he or she has done so, the opposing party must come forward with enough evidence to demonstrate that there is a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. To determine if a dispute is genuine, a court must ask whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is with this framework that the defendants' motion is evaluated.

### A. Express Warranty

Article two of the Uniform Commercial Code states that express warranties may be created by any affirmation of fact or promise, any description of the goods, or any sample or model. Mass.Gen.L.Ann. ch. 106, § 2–313 (West 1990). In this case, the plaintiff bases its claim for breach of express warranty on the warranty that Hydroplanes transferred to it. (Plaintiff's Answer to Defendants' Interrogatory No. 4). In addressing defendants' motion for summary judgment, the first task is to determine if the express warranty was still in force, or if it had expired by its terms before the crash.

It therefore becomes necessary to interpret the following language contained in paragraph 6 of the warranty:

> ... Seller's obligation under this warranty being limited to replacing or repairing such part at its designated place of business, with the charges payable by Purchaser for such repair or replacement to be prorated for hours of use against the established life of the part or 2,000 hours, whichever is the lesser (with no charges being payable to Purchaser in the event of repair or replacement within the first 500 hours of use), provided that such part shall have been returned to Seller's designated place of business, with transportation charges prepaid, within 1,000 hours of operation or one year, whichever shall first occur, after delivery of such part ...

Without a doubt, this single-sentence paragraph is unartfully drafted. Defendants argue that the extended component time warranty of 500 hours ran concurrently with a standard warranty providing for proration of replacement costs. Thus, according to defendants, the plaintiff was entitled to the benefit of the proration formula for 1,000 hours or one year, whichever occurred first, but would receive free repair or replacement for 500 hours regardless of the one year limitation. Put another way, defendants contend that the clause in paragraph 6 beginning with the word "provided," does not apply to the 500 hour free repair-and-replace clause which is set forth parenthetically. Thus, the defendants argue, because the helicopter crashed at 566.8 hours, neither the standard nor the extended warranty was in effect.

Not surprisingly, plaintiff puts forth a different interpretation of the warranty. In fact, plaintiff has proposed two different interpretations. In its first interpretation, plaintiff takes what would appear to be a pro-defendant position. Plaintiff maintains that the 1,000 hours/one year limitation applies to both the applicability of the proration formula and the 500 hour free repair-or-replacement clause. Having argued that the warranty had expired by its terms due to the expiration of one year, plaintiff contends that by allowing for the assignment of the expired warranty from Hydroplanes to plaintiff on November 19, 1985 (more than one year after delivery), and by honoring warranty claims after one year had expired, defendants waived the one year restriction set out in its warranty. Plaintiff's second reading of the warranty is that each part was under warranty for the certified life of the part, which is 1,400 hours for the tail rotor blade.

 To resolve this dispute concerning the meaning of the warranty, this Court must examine fundamental principles of contract interpretation. It is well-settled under Massachusetts law that the construc-

tion of an unambiguous contract is a question of law reserved for the court. *Boston Edison v. Federal Energy Regulatory Comm'n*, 856 F.2d 361, 365 (1st Cir.1988); *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786 (1970). Likewise, the determination of whether a contract is in fact ambiguous is a question of law. *Boston Edison*, 856 F.2d at 365. A contract is considered ambiguous where the terms used can reasonably support differing interpretations. *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir.1989). A contract that lacks ambiguity must be enforced according to its terms. *Liberty Mut. Ins. Co. v. Gibbs*, 773 F.2d 15, 17 (1st Cir.1985). In construing a contract, a court must give reasonable effect to each provision, and the contract must be viewed as a coherent whole. *J. A. Sullivan Corp. v. Commonwealth*, 397 Mass. 789, 795, 494 N.E.2d 374 (1986). In doing so, a court will be guided by common sense, justice and the probable intention of the parties. *Stop & Shop, Inc. v. Ganem*, 347 Mass. 697, 701, 200 N.E.2d 248 (1964).

In some instances, however, where a contract is ambiguous and extrinsic evidence is used, a factual question may create a proper case for a jury regarding the meaning of a contract. *Atwood v. Boston*, 310 Mass. 70, 75, 37 N.E.2d 131 (1941). Such is the case "where more than one view can be taken of the evidence respecting the circumstances of the parties and the condition of the subject with which they are dealing." *Ober v. National Casualty Co.*, 318 Mass. 27, 30, 60 N.E.2d 90 (1945). Thus, a contract cannot be interpreted as a matter of law by the court where there exists a dispute regarding material facts or the inferences to be drawn from the facts. *Computer Sys. Eng'r, Inc. v. Oantel Corp.*, 740 F.2d 59, 65 n. 8 (1st Cir.1984);

*Hamed v. Fadili*, 408 Mass. 100, 106, 556 N.E.2d 1020 (1990); *Thomas v. Christensen*, 12 Mass.App.Ct. 169, 174, 422 N.E.2d 472 (1981).

Under the framework described above, the first step in construing the contract is to determine, as a matter of law, if the warranty is ambiguous. *Boston Edison*, 856 F.2d at 365. A contract is not ambiguous simply because the parties disagree about its meaning. The defendants point to extrinsic evidence, specifically the parties' course of performance, to support their claim that the 500 hour free repair-or-replace provision continues to operate outside of the one year limitation. Extrinsic evidence, however, cannot be used to contradict terms in a contract where the contract is clear on its face. *ITT Corp. v. LTX Corp.*, 926 F.2d 1258, 1264 (1st Cir.1991); *Savignano v. Gloucester Hous. Auth.*, 344 Mass. 668, 673, 183 N.E.2d 862 (1962). This is such a case.[7]

In construing the paragraph at issue, general rules of grammatical construction apply. *Deerskin Trading Post, Inc. v. Spencer Press, Inc.*, 398 Mass. 118, 123, 495 N.E.2d 303 (1986). One such rule is that parentheses are used to set aside nonessential matter. C. Millward, *Handbook for Writers* 125 (1980). Thus, parentheses do not separate and emphasize that which is contained within them, but rather, deemphasize. *Deerskin Trading Post, Inc.*, 398 Mass. at 124, 495 N.E.2d 303 (parenthetical phrase said to be "included in" main clause). The fact that the free repair-or-replace clause is mentioned parenthetically is patently inconsistent with the defendants' assertion that the parenthetical describes, in essence, a separate "extended component time warranty of 500 hours [that] ran concurrently with the standard warranty."

---

**7.** This Court rejects outright plaintiff's unfounded argument that paragraph 6 can be read to extend a warranty for the certified life of the part, which in this case would be 1,400 hours. (See Plaintiff's Memorandum in Opposition at 9). Presumably, plaintiff relies on the following language in the warranty: "charges ... to be prorated for hours of use against the established life of the part or 2,000 hours, whichever is the lesser." As poorly drafted as paragraph 6 is, it is clear that the language concerning "the established life of the part or 2,000 hours" concerns only the method or formula by which repair and replacement charges would be prorated. It is disinguous at best for plaintiff to suggest that each part is warranted for its certified life, as argued in its memorandum, or for 2,000 hours, as proposed in plaintiff's statement of material facts.

(See Defendants' Memorandum in Support of the Motion for Summary Judgment at 4). As a result, it is clear that the parenthetical phrase in the warranty is merely incidental to the preceding clause describing the manner in which charges were to be prorated.

As part of that clause, the parenthetical is modified by the "provided" clause, and is therefore subject to the one year limitation. This reading of the warranty is consistent with the well-established rule of grammatical construction that "a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Id.* at 123, 495 N.E.2d 303 (quoting *Commonwealth v. Brown,* 391 Mass. 157, 160, 460 N.E.2d 606 (1984) (quoting *Moulton v. Brookline Rent Control Bd.,* 385 Mass. 228, 230–231, 431 N.E.2d 225 (1982))). Here, there is nothing in the warranty which would suggest a different interpretation. In fact, as mentioned above, just the opposite is true, as it would be unrealistic to expect a seller blithely to create by way of parentheses a second and independent warranty for free repair or replacement of parts. Moreover, the repair-or-replace clause is *part of,* not separate from, the standard warranty, given the first sentence of paragraph 6 which states that "[t]he Equipment is purchased subject to Seller's standard warranty *which is as follows.*" (emphasis added). In sum, the warranty unambiguously supports plaintiff's position (albeit an ironic one) that, at the time of the crash, the warranty had expired due to the one year limitation.[8]

Having determined that the warranty had already expired at the time of the crash, it is clear that plaintiff's claims based on express warranty are barred absent evidence that the one year durational limitation was inapplicable. The plaintiff has characterized its argument as one of waiver. To support its waiver argument, plaintiff points first to the fact that the defendants acknowledged the assignment of the warranty even though the one year period had already expired. Additionally, the plaintiff argues that the defendants waived the one-year limitation by honoring more than thirty of plaintiff's warranty claims submitted outside the one year warranty period.

Section 2–209 of the Uniform Commercial Code governs questions of modification, rescission and waiver. Mass.Gen.L. Ann. ch. 106, § 2–209 (West 1990). That section reads as follows:

(1) An agreement modifying a contract within this Article needs no consideration to be binding.

(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant must be separately signed by the other party.

(3) The requirements of the Statute of Frauds section of this Article (section 2–201) must be satisfied if the contract as modified is within its provisions.

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) or (3) it can operate as a waiver.

(5) A party who has made a waiver affecting an executory portion of the

---

8. Even if this Court were to conclude that the warranty was ambiguous, the extrinsic evidence does not point unequivocally to defendants' interpretation. First, looking at CAGA's notation on many of the claim forms that "the warranty [had] expired due to calendar limits," it would appear that CAGA itself understood the repair-or-replace remedy to be limited to one year. Second, the Minogue affidavit relied on by defendants is itself ambiguous. Defendants rely on this affidavit for the proposition that the 500 hour free repair-or-replace remedy was available outside of one year. Nonetheless, in contradiction of this argument, in paragraph 5,

Minogue states that "[f]or the first 200 hours of operation, repair or replacement was performed free of charge, *provided it was within one year,*" and in paragraph 6, Minogue explains that although the parties changed the 200 hours to 500 hours, all other terms remained the same. (Defendants' Exhibit B, Minogue Affidavit). Presumably, therefore, one of the terms that remained the same was that repairs were free *provided they were within one year.* In any case, this Court's decision that the warranty was expired would not be changed, as will be discussed below.

contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver.

*Id.* The Code then looks to state law for the definitions of waiver and modification.

 According to Massachusetts law, "waiver" is the voluntary relinquishment of a known right. *St. John Bros. Co. v. Falkson*, 237 Mass. 399, 402, 130 N.E. 51 (1921). This definition has been clarified by one commentator, who explains that waiver is actually "the excuse of the nonoccurrence of or a delay in the occurrence of a condition of a duty." *See* E.A. Farnsworth, *Contracts* § 8.5 (2d ed. 1990). A waiver can be express, or it can be inferred from a party's conduct and the surrounding circumstances. *Lone Mountain Prod. Co. v. Natural Gas Pipeline Co.*, 710 F.Supp. 305, 311 (D.Utah 1989). A waiver implied by a person's conduct, however, must be unequivocal and must allow room for no other explanation of the conduct of the person who allegedly is waiving a contractual right. *Lone Mountain Prod. Co.*, 710 F.Supp. at 311. Furthermore, the concept of waiver is generally applied only to minor or incidental conditions in a contract. E.A. Farnsworth, *Contracts* § 8.5 (2d ed. 1990). Whether a waiver has taken place is usually a question of fact for the jury. *Kennedy Bros. Inc. v. Bird*, 287 Mass. 477, 485, 192 N.E. 73 (1934); *St. John Bros. Co.*, 237 Mass. at 402, 130 N.E. 51.

It is possible to locate precedent that supports applying the concept of waiver to warranty durational limitations. *See Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784, 802 (1978); *Ed Fine Oldsmobile, Inc. v. Knisley*, 319 A.2d 33, 36 (Del.Super.Ct.1974); R. Andersen, *Uniform Commercial Code* §§ 2–719:26, 2–719:75 (3d ed. 1984). The soundness of such precedent, however, is highly questionable in the current situation. *See Hart Eng'g Co. v. F.M.C. Corp.*, 593 F.Supp. 1471, 1478 (D.R.I.1984) (refusing to apply waiver principles to warranty durational

limitation); Annotation, *Seller's Waiver of Sales Contract Provision Limiting Time Within Which Buyer May Object to or Return Goods or Article for Defects or Failure to Comply with Warranty or Representations*, 24 A.L.R.2d 717, 720 (1952) ("Where the qualifications of the seller's warranty are that notice of or objection to defects must be made within a certain time, however, the principle of waiver is not so readily applied."). In *Hart Engineering Co. v. FMC Corp.*, Judge Selya described the application of waiver to a similar situation as "akin to trying to force a square peg into a round hole." 593 F.Supp. at 1478. He correctly described the conceptual difficulty of applying the waiver argument to a one year warranty limitation stating:

> To view the warranty, or even the delimited term which is part and parcel thereof, as a privilege or benefit enjoyed by the defendant is to turn the actual relationship of rights and obligations established by the purchase agreement on its head. Thus, it would seem that the defendant's conduct ... could not have amounted to a waiver.

*Id.*

 Plaintiff's argument, therefore, must not be that the one year limitation was waived, but rather, that the one year warranty was extended or modified. *See National Util. Serv., Inc. v. Whirlpool Corp.*, 325 F.2d 779, 781 (2d Cir.1963) ("A party may waive performance of a condition inserted for his benefit and thereby make unconditional the other party's duty under an agreement, but he cannot by waiver of a condition precedent to his own liability create obligation in himself where none previously existed. To create such an obligation requires a new contract and new consideration."); *Hart Eng'g Co.*, 593 F.Supp. at 1478 (construing waiver argument as one for novation or "revivification" of the original warranty). Any argument that the warranty period was extended or modified necessarily relies on the November 19, 1985 "Assignment of Warranty" which was confirmed and accepted by AAC. In that letter, Hydroplanes authorized AAC to transfer to the plaintiff "the

balance of the aircraft warranty ... as provided in the original Purchase Agreement between Hydroplanes, Inc. and Agusta Aviation Corporation. The approximate time remaining is 200 hours."[9] On the bottom of the same letter, the following was written: "Balance of Warranty at November 19, 1985 is 185.1 hours." This document, read together with the paragraph in plaintiff's purchase and sale providing for the transfer of the warranty to plaintiff, could be considered a modification of the otherwise expired one year warranty period.

■ Nonetheless, it is clear as a matter of law that, to the extent the letter extended the warranty beyond one year, it did so for the limited period of either 185.1 or 200 hours. Given that the helicopter had logged approximately 315 aircraft hours at the time it was sold to plaintiff, the modification or extension would mean that the warranty was in force until the helicopter reached 500.1 or 515 hours, depending on which of the two figures in the November 19 letter was used. This duration would appear to be in accordance with plaintiff's expectations, given the fact that plaintiff's own purchase and sale agreement with Hydroplanes stated that there were approximately 200 hours remaining on the warranty. (Aircraft Purchase and Sale Agreement, ¶ 14.I.).

■ Plaintiff makes much of the fact that AAC honored a warranty claim on October 2, 1986, when the helicopter had a total of 504 aircraft hours.[10] Looking to the higher figure of 200 hours, this claim at 504 hours fell within the warranty period as modified. Even assuming that the warranty expired at 500 hours, there is no issue of material fact for a jury to decide. As a matter of law, no reasonable jury could find that the defendants extended or modified the warranty by honoring one claim approximately four hours after the warranty had expired. In fact, refusing to

honor such a claim would clearly be an unsound business practice in terms of cultivating goodwill. *See* Annotation, *Seller's Waiver of Sales Contract Provision Limiting Time Within Which Buyer May Object to or Return Goods or Article for Defects or Failure to Comply with Warranty or Representations*, 24 A.L.R.2d 717, 720 (1952) ("[A]ttempts or promises to remedy defects after the time for giving notice has expired are looked at by most courts as acts merely of friendly concern and voluntary efforts to satisfy the buyer so that the reputation of the seller may not be impugned."). In sum, therefore, summary judgment should be granted in favor of AAC and CAGA on plaintiff's claims for breach of an express warranty.

### B. Failure of Essential Purpose

Count X of the amended complaint, asserted only against AAC, alleges that the warranty's remedy failed of its essential purpose. Article two specifically permits parties to modify the contractual remedies provided in the Code. *See* Mass.Gen.L. Ann. ch. 106, § 2–719(1)(a) (West 1990). In fact, section 2–719(1)(a) specifically permits limitations such as the repair-or-replace limitation found in the warranty at issue here. Nonetheless, section 2–719(2) cautions that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this subchapter." Mass.Gen.L. Ann. ch. 106, § 2–719(2) (West 1990). Whether a remedy has failed of its essential purpose is a question of fact.

■ Courts have held that a repair-or-replace remedy fails of its essential purpose where the "seller is either unwilling or unable to conform the goods to the contract." *Chatlos Sys., Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1085 (3d Cir.1980); 3 W. Hawkland, *UCC Series* § 2–719:03 (1984). For example, the Ninth

---

9. Plaintiff does not contest that a valid assignment took place by virtue of the November 19, 1985 letter, and the provision in its purchase and sale agreement with B.L. Jet Sales (now Hydroplanes) providing for the transfer of the warranty.

10. Plaintiff's argument concerning the claim at 504 hours was made to counter defendants' argument, discussed above, that the free repair or replace provision ran for 500 hours.

Circuit has held that a repair-or-replace remedy fails of its essential purpose as a matter of law where the seller completely refuses to honor its duty to repair or replace. *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1313 (9th Cir.1984). Similarly, as to a seller's inability to conform the goods to the contract, there is one line of cases standing for the proposition that a repair-or-replace remedy fails of its essential purpose where, during the life of the warranty, the goods are totally destroyed as a result of the defective part. *See, e.g., Rudd Constr. Equip. Co. v. Clark Equip. Co.*, 735 F.2d 974, 982 (6th Cir.1984). Thus, where a repair-or-replace remedy deprives the buyer of minimum adequate remedies, the warranty will be said to have failed of its essential purpose. Mass.Gen.L.Ann. ch. 106, § 2–719 Massachusetts code comment (West 1990); *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 406 Mass. 369, 373, 548 N.E.2d 182 (1990).

 Section 2–719 must be examined, however, in light of this Court's determination that the warranty was limited in duration and had expired by its terms at the time of the crash. There is some authority for the proposition that a warranty fails of its essential purpose according to section 2–719(2) where the defects were latent, and therefore could not have been discovered during the limited period of the warranty. *See, e.g., Ritchie Enter. v. Honeywell Bull, Inc.*, 730 F.Supp. 1041, 1048 (D.Kan. 1990); *Comind, Companhia de Seguros v. Sikorsky Aircraft Div. of United Technologies Corp.*, 116 F.R.D. 397, 413 (D.Conn. 1987).[11] The better reasoned approach, however, is that 2–719(2) is inapplicable once the warranty has expired. *See, e.g., Arkwright–Boston Mfrs. Mut. Ins. Co. v. Westinghouse Elec. Corp.*, 844 F.2d 1174, 1179–80 (5th Cir.1988); *Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412–13 (7th Cir.1987); *Hart Eng'g Co.*, 593 F.Supp. at 1479; *Clark*, 99 Idaho 326, 581 P.2d at 802–03; *see also Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 941 (2d

Cir.1980) (no failure of essential purpose where repair-or-replace remedy was available throughout warranty period and defect discovered after warranty expired); *Airlift Int'l, Inc. v. McDonnell Douglas Corp.*, 685 F.2d 267, 270 (9th Cir.1982) (same); 2 R. Andersen, *Uniform Commercial Code* § 2–302:86 (1982) (time limitation not a question of failure of remedy, but of whether unconscionable). As explained by one court:

> This is certainly not a case in which an exclusive or limited remedy failed of its essential purpose. To the contrary, the warranty provisions here operated just as intended, allocating the risk of loss between the parties both before and after the warranty expired. The transformer operated satisfactorily long after the warranty period had run. A purchaser cannot claim that a warranty provision has failed of its essential purpose merely because a potential claim does not arise until after the warranty period has expired.

*Arkwright–Boston Mfrs. Mut. Ins. Co.*, 844 F.2d at 1179 (quoting *Wisconsin Power & Light Co.*, 830 F.2d at 1412–13). Put another way, to apply 2–719(2) to an expired warranty is to confuse limitation of *remedy* with limitation of *liability*. *Hart Eng'g Co.*, 593 F.Supp. at 1479. Thus, as 2–719(2) concern remedies, it is inapplicable to AAC's warranty provision limiting the duration of liability.

 The issue therefore is whether the durational limitation is unconscionable under Mass.Gen.L.Ann. ch. 106, § 2–302. *Hart Eng'g Co.*, 593 F.Supp. at 1480; *Clark*, 99 Idaho 326, 581 P.2d at 803. This question must be answered by the Court as a matter of law. *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 291, 408 N.E.2d 1370 (1980). Massachusetts has adopted a case by case approach to determining whether a given term is unconscionable. *Id.* at 292–93, 408 N.E.2d 1370. A court will declare a contract unconscionable in order to prevent oppression or unfair surprise. Mass.Gen.

---

**11.** Plaintiff has not argued a latent defect theory. Plaintiff did, however, argue that the defect in the tail rotor blade began to occur within the warranty period. (Plaintiff's Memorandum in Opposition at 10). Even viewing this as a latent defect argument, it must be rejected.

L.Ann. ch. 106, § 2–302 comment 1 (West 1990); *Zapatha*, 381 Mass. at 292, 408 N.E.2d 1370. The relevant consideration is the circumstances at the time the contract was made, and not the circumstances as they later developed. *Zapatha*, 381 Mass. at 291, 408 N.E.2d 1370. Significantly, however, the doctrine of unconscionability is not typically applied to commercial dealings between business entities, but has been invoked more often in consumer transactions. 2 W. Hawkland, *Uniform Commercial Code Series* § 2–302:06 (1984).

■ Against this background, it cannot be said that the durational limitation of the repair-or-replace warranty was unconscionable. First, the commercial, as opposed to consumer, setting is significant, as is the fact that Boston Helicopter, a business entity, was represented by counsel when it purchased the Agusta helicopter. (See Affidavit of Gary P. Lilienthal, Esq.). Likewise, plaintiff specifically negotiated the transfer of the warranty to it, suggesting that plaintiff was not the uninformed buyer that section 2–302 seeks to protect against unfair surprise. Second, plaintiff has not even argued that the limitation was unreasonable, or that the helicopter when originally sold had a latent defect; plaintiff has merely suggested that the fracture in the tail rotor blade began to develop within the warranty period. Certainly, one could find that most product failures secretly began within the warranty period. Third, it is significant that paragraph 6a, in disclaiming consequential and incidental damages, specifically mentioned "damage to helicopter" as not being recoverable. This explicit statement concerning the possibility that a defective part could damage the helicopter cuts against any argument that there has been any "unfair surprise." Similarly, defendants' warranty guide, in demonstrating how the proration formula would work, gives the following example: "Suppose that a tail rotor blade, whose cost is approximately $1,200.00 and retirement life is

1200 hours has failed after 400 hours of operation, the recognized credit would be...." (Plaintiff's Exhibit Q, Guide to Agusta Commercial Warranty ¶ 9). The possibility of a failure of the tail rotor blade was, therefore, not an "unfair surprise." Plaintiff would have this Court find such terms inapplicable and unconscionable due to plaintiff's failure to obtain a copy of the warranty. As will be discussed in more depth below, the fact that plaintiff did not obtain a copy of the warranty has no bearing on the applicability of its terms to plaintiff nor on the reasonableness of the limitation period.

There are other factors weighing against a finding of unconscionability. The period of 1,000 flight hours or one year, is ample, and typical of time limits upheld in other cases involving aircrafts. *See, e.g., Damin Aviation Corp. v. Sikorsky Aircraft, Div. of United Technologies Corp.*, 705 F.Supp. 170, 172 (S.D.N.Y.) (1,000 hours or 2 years), *aff'd*, 880 F.2d 1318 (2d Cir.1989); *Tokio Marine & Fire Ins.*, 617 F.2d at 941 (one year or 2,500 hours); *cf. Hart Eng'g Co.*, 593 F.Supp. at 1480 ("the durational restriction that Hart challenges does not span a mere matter of days."). Finally, this is not a case where "because of the seller's willful and dilatory disregard of its contractual obligations, fairly [cries] out for judicial intervention." *Hart Eng'g Co.*, 593 F.Supp. at 1480. From all of the material presented to this Court, it appears that the defendants were forthright and prompt in fulfilling their warranty obligation, honoring more than thirty claims during the life of the warranty. The durational limitation is simply not unconscionable, but is a wise business practice of risk allocation.

### C. Implied Warranties

Defendants have also moved for summary judgment on plaintiff's claims for breach of implied warranties.[12] The relevant part of paragraph 6a, typed in capital letters, reads as follows: "THIS WARRANTY IS GIVEN EXPRESSLY AND IN

---

12. The plaintiff's claims for breach of implied warranties are as follows: Count VIII "Breach of Implied Warranty" by AAC; Count IX "Breach of Warranty of Fitness for a Particular

Purpose" by AAC; Count XII "Breach of Implied Warranty" by CAGA; Count XIII "Breach of Warranty of Fitness for a Particular Purpose" by CAGA.

PLACE OF ALL OTHER EXPRESS OR IMPLIED WARRANTIES INCLUDING MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND THIS WARRANTY IS THE ONLY WARRANTY MADE BY SELLER OR THE AGUSTA GROUP." The question is whether this explicit disclaimer acts to bar all of plaintiff's claims based on an implied warranty theory.

 The exclusion of implied warranties is governed by Mass.Gen.L. ch. 106, § 2–316. Section 2–316(2) provides in relevant part that "[s]ubject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous." Section 1–201(10) defines conspicuous, stating that "[a] term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Mass.Gen.L.Ann. ch. 106, § 1–201(10) (West 1990). Factors to be considered in evaluating the conspicuousness of a disclaimer are the size of the type, the location of the disclaimer clause, capitalization of the relevant language and the sophistication of the contracting parties. *Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1197 (D.Mass. 1990). Using these criteria, it is clear that the disclaimer was conspicuous within the meaning of section 2–316. The language disclaiming all implied warranties is typed in capital letters which stand out from the remainder of the warranty paragraph. Moreover, the disclaimer is in no way vague, but on the contrary, specifically mentions "MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE."

 This Court rejects plaintiff's argument that the language was not conspicuous because plaintiff failed to obtain a copy of the warranty when the warranty was assigned to it by Hydroplanes. Section 2–210 of the UCC recognizes that assignability is normal and permissible in the context of contracts for the sale of goods. Mass.Gen.L.Ann. ch. 106, § 2–210 uniform commercial code comment 1 (West 1990). Warranties are no exception to this policy in favor of assignability. *Gold'n Plump Poultry, Inc. v. Simmons Eng'g Co.*, 805 F.2d 1312, 1316 (8th Cir.1986); 2 R. Andersen, *Uniform Commercial Code* § 2–210:34 (3d ed. 1984); Annotation, *Assignability of Warranty of Goods and Chattels*, 17 A.L.R.2d 1196, 1197 (1951). Plaintiff has not disputed that the transfer or assignment of the warranty was valid, and in fact, based its express warranty claim on the transferred warranty. (See Plaintiff's Answers to Interrogatories 4 & 13). This Court agrees that a valid assignment of the warranty took place. *See Cosmopolitan Trust Co. v. Leonard Watch Co.*, 249 Mass. 14, 143 N.E. 827 (1924) (discussing requirements for a valid assignment).

 Having concluded that there was indeed a valid assignment of the warranty, it is clear that the plaintiff is bound by the warranty's limitations and disclaimers. The weight of the available case law and commentary indicates that a subpurchaser, such as the plaintiff, is subject to any limitations or exclusions contained in the express warranty even though he did not receive a copy of it. *Lecates v. Hertrich Pontiac Buick Co.*, 515 A.2d 163, 166 (Del.Super.Ct.1986); *General Motors Corp. v. Halco Instruments, Inc.*, 185 S.E.2d 619, 621 (Ga.Ct.App.1971); 3 R. Andersen, *Uniform Commercial Code* § 1–316:57 (3d ed. 1982). The rationale, as stated by one court is that "[t]o say otherwise would mean that a disclaimer or warranty modification loses its effectiveness upon resale of goods, with later purchasers receiving warranty rights denied to their sellers." *Lecates*, 515 A.2d at 166. This conclusion is in accordance with the general principle that an assignee steps into the shoes of his assignor. *Rhode Island Hosp. Trust Nat'l Bank v. Ohio Casualty Ins. Co.*, 789 F.2d 74, 81 (1st Cir.1986); *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 545, 536 N.E.2d 587 (1989). This reasoning is sound, especially in light of the circum-

stances surrounding the purchase of the helicopter. More specifically, it is significant that the purchase and sale agreement plaintiff signed specifically provided that Hydroplanes would deliver to plaintiff "all documentation necessary to transfer to [plaintiff] the extended factory warranty ... which extended factory warranty is equivalent to the factory warranty offered with a new aircraft...." [13] Certainly, plaintiff was on notice that there was warranty documentation that it needed to obtain. The fact that plaintiff did not receive such information would be a contractual issue between it and Hydroplanes. Having taken advantage of the warranty in excess of thirty times, plaintiff cannot now seek to be relieved from the warranty's disclaimers and limitations. Thus, plaintiff's implied warranty claims are barred by the warranty's disclaimer of implied warranties.

### D. Mass.Gen.L. ch. 93A

■ Defendants also request that judgment be entered in their favor on Counts LXXVIII and LXXVIX, in which plaintiff asserts claims against AAC and CAGA, respectively, for "violations on [sic] G.L. c. 93A and consequential damages predicated on breach of contract, negligence and breach of warranty." [14] Section 2–719(3) permits parties to limit or exclude consequential damages unless the limitation or exclusion is unconscionable. Mass.Gen.L. Ann. ch. 106, § 2–719(3) (West 1990).[15] The Supreme Judicial Court has held that in some circumstances a 93A claim may be duplicative of a warranty claim, and therefore, a clause excluding consequential damages can also bar a 93A claim. *Canal Elec. Co.*, 406 Mass. at 378–79, 548 N.E.2d

182. This is such a case. The parties having excluded consequential damages, and this Court having determined that the defendants are entitled to summary judgment on plaintiff's warranty claims, it is clear that the defendants are also entitled to summary judgment on the 93A claims.

### III.

■ The final issue to be disposed of is defendant/cross-plaintiff Hydroplanes' motion for summary judgment for indemnity against AAC and CAGA. Relying primarily on two Massachusetts cases, Hydroplanes asserts that it has a tort-based right to indemnity stemming from the disparity in the fault of the parties. *See Stewart v. Roy Bros., Inc.*, 358 Mass. 446, 265 N.E.2d 357 (1970); *Oates v. Diamond Shamrock Corp.*, 23 Mass.App.Ct. 446, 503 N.E.2d 58, *review denied*, 399 Mass. 1104, 506 N.E.2d 146 (1987). In support of its motion, Hydroplanes has submitted the affidavits of Wayne Bradbury, the head of maintenance for Hydroplanes, and Bernard Little, Sr., the president of Hydroplanes. Both affidavits simply state that the helicopter received proper maintenance, and that the helicopter had no damage history while in Hydroplanes' possession. It is not clear by any means from the affidavits submitted by Hydroplanes that, as a matter of law, AAC and CAGA should indemnify Hydroplanes for any loss. These conclusory statements do not rise to the level of demonstrating that there is no genuine issue for trial. *See* Fed.R.Civ.P. 56(e). Thus, summary judgment on the issue of indem-

---

**13.** Likewise, the purchase and sale agreement stated that "[Hydroplanes] agrees at closing to deliver to [plaintiff] all Aircraft records and logs including ... warranties...." (Plaintiff's Exhibit C, Aircraft Purchase and Sale Agreement ¶ 14J).

**14.** Defendants correctly point out that plaintiff, Boston Helicopter, has not asserted any claims against defendants based upon breach of contract or negligence. Thus, breach of warranty would be the only basis for the 93A claim with respect to Boston Helicopter. The individual plaintiffs injured in the crash have asserted negligence claims against AAC and CAGA and in

Counts LXXXI and LXXXII assert 93A claims against AAC and CAGA that are predicated, in part, on such negligence claims.

**15.** Section 2–719(3) states that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Mass.Gen.L.Ann. ch. 106, § 2–719(3) (West 1990).

nification is premature at this point, and should be denied.[16]

For all of the reasons stated above, the motion of defendants AAC and CAGA for partial summary judgment should be allowed on Counts VII, VIII, IX, X, XI, XII, XIII, LXXVIII and LXXVIX. Hydroplanes' motion for summary judgment on its claim for indemnity is premature, and should be denied.

Order accordingly.

---

**16.** Hydroplanes filed a motion to strike AAC and CAGA's opposition to its motion for summary judgment for indemnity, arguing that AAC and CAGA failed to set forth specific facts showing that there is a genuine issue for trial. It is Hydroplanes, however, that bears the initial burden of demonstrating the lack of any genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. Hydroplanes has not met this burden, as genuine questions remain concerning the reason for the failure of the tail rotor blade, especially given the fact that Hydroplanes controlled and flew the helicopter for more than one year before selling it to the plaintiff. Thus, Hydroplanes' motion to strike the opposition should be denied.